**In re Jed Edwin GOLDBERG, Debtor.**

**Bankruptcy No. 83–01642.**

United States Bankruptcy Court, N.D. Oklahoma.

March 31, 1986.

Fred W. Woodson, Tulsa, Okl., Trustee and for trustee.

John Howland of Rosenstein, Fist & Ringold, Tulsa, Okl., for debtor.

MEMORANDUM ORDER
AND DECISION

MICKEY D. WILSON, Bankruptcy Judge.

This case is presently before the Court upon the objection of the trustee, Fred W. Woodson, (Trustee) to the debtor's claim of exempt property. The Trustee objects to the claim of exemption under Schedule B–4 to the following personal property:

Micro computer, TRS 80 Model 3 and printer

Casio watch

Gold chain and pendant ($10 gold piece)

T. Rowe Price Keogh Plan

Sooner Federal Savings and Loan Keogh Retirement Plan

IRA account—Western National Bank

At the hearing the debtor, Jed Edwin Goldberg (Debtor), agreed to stipulate to the validity of the Trustee's objection to his claim of exemption of the Western National Bank IRA account. After a full evidentiary hearing decision upon the Trustee's objection to the remaining property was taken under advisement.

## FACTS

Upon the testimony adduced before me, the exhibits introduced into evidence and upon the facts agreed upon by the parties, the Court makes the following finding of fact.

On November 10, 1983, the debtor filed his petition for relief under Chapter 7 of Title 11 of the United States Code. The Debtor is a medical doctor who has been licensed to practice medicine since 1948. Debtor is a partner in the medical partnership Lindstrom, Goldberg, Ketchum, Haggard and Shane (Partnership) although a written partnership agreement was never signed. The Debtor has been a partner in the partnership or a predecessor to the partnership since 1975. The partnership agreement that has been in effect since July, 1982, provides that the Debtor's earnings are calculated based upon actual earnings less his proportionate share of expenses, both fixed and variable.

The Partnership established a Keogh Plan with T. Rowe Price (Price Plan) for the partnership tax year which ended June 30, 1976. The sums paid into the Price

Plan for each year ranged from $1,800.00 to $7,500.00 for the tax years 1976—1983. For five of the eight years, $7,500.00 was paid into the Price Plan each year. For two of the eight years the total sum of contributions to the Price and Sooner Keogh Plans was $7,500.00; for one year the total of contributions was $6,300.00 (See Joint Exhibit 6). All contributions which have been made to the plan and allocated to the Debtor's account have been made by the Partnership.[1] The Debtor has never contributed any money to the Price Plan directly from the Debtor's personal savings account or checking account. At the time of filing the petition the value of the Price Plan was $101,000.00.

The Partnership additionally established a Keogh Plan with Sooner Federal Savings & Loan Association (Sooner Plan) in 1979. Sums were paid into the Sooner Plan in the amount of $5,700.00 in 1979, $3,250.00 in 1982, and $3,800.00 in 1983. The aggregate yearly deposit by the Partnership to the Debtor's Price and Sooner Plans never exceeded $7,500.00 and never exceeded 15% of the Debtor's earned income from the price of medicine. All contributions to the Sooner Plan allocated to the Debtor's account have been made from the Partnership's banking account. The Debtor never made any contributions to the Sooner Plan from the Debtor's personal savings or checking accounts. At the time of filing the value of the Sooner Plan was $23,000.00.

The Debtor claims the computer and printer exempt as tools of trade. The Debtor has a computer consulting business in addition to his medical practice. The computer business is conducted through Systems 3 Consulting, Inc., (Systems 3) a corporation of which the Debtor is a minority shareholder. The TRS 80 Model 3 computer and printer are located at Debtor's

---

1. At the hearing Debtor was confused about the source of the contributions to the Keough Plans. Two weeks after the hearing on this matter the Debtor filed his Application Offering Additional Evidence by way of an Affidavit attached thereto and marked as Exhibit "A". The Trustee did not object to the Debtor's application to offer the additional evidence. The Court finds that the offer of additional evidence will not unduly prejudice the Trustee. Accordingly, the Court grants the application and will consider the assertions of the Debtor in his Affidavit as additional evidence.

residence. Debtor admitted that the computer owned by Systems 3 is a different computer than his TRS 80 Model 3 home computer. Debtor has taught computer courses at Tulsa Junior college and The University of Tulsa. Clients of Systems 3 include: other doctors, Tulsa Truck Stop, Radiology, Inc., Icemakers of Oklahoma and The Arts and Humanities Council of Tulsa, Inc. The gross income of Systems 3 for tax year ending June, 1982 was $4,500.00 and for tax year ending June, 1983, $8,100.00.

The Debtor claims his watch, pendant and gold chain exempt as wearing apparel. The Casio watch has an uncontroverted value of approximately $10.00. The pendant is a gold ten-dollar coin. The Debtor wears his watch, gold chain and pendant daily as an ornamentation.

## I

The first question presented is whether the Keogh plans are eligible for exemption under Oklahoma or federal law.

## A

■ Initially the Court must determine whether the Keogh plans are excluded from property of the estate under 11 U.S.C. § 541(c)(2). Pursuant to § 541 of the Bankruptcy Code, all property in which the Debtor has a legal or equitable interest at the time of bankruptcy comes into the estate. An exception to the otherwise all-encompassing scope of § 541(a) is § 541(c)(2). This section preserves restrictions on the transfer of a beneficial interest of the Debtor in a trust that is enforceable under applicable nonbankruptcy law. Section 541(c)(2) prevents such an interest of the Debtor from inclusion in the property of the estate. The Fifth, Eighth, Ninth and Eleventh Circuits have all rejected the claim that a Keogh plan was excludable from the estate under § 541(c)(2).

The Fifth Circuit dealt with the question of whether a Keogh plan may be excluded from the property of the estate by operation of 11 U.S.C. § 541(c)(2) in *In the Matter of Goff,* 706 F.2d 574 (5th Cir.1983). In

that case the plan included self-employed retirement trusts valued at over $90,000, including a $2,878 contribution made by the Goffs only three days prior to declaration of bankruptcy. The trust agreements granted Dr. Goff the right to withdraw funds prior to either retirement, sale or termination of his business, or death, subject only to a ten percent tax penalty.

The *Goff* Court recognized that § 541(c)(2) provides that restrictions on the alienation of trust funds which are enforceable under "applicable nonbankruptcy law" are likewise enforceable in bankruptcy, but after considering the legislative history of the section held that Congress intended a limited exemption for spendthrift trusts.

> [W]e find that Congress intended to exclude only trusts in the nature of 'spendthrift trusts' from property of the estate ... [I]t is clear in the immediate case that appellate's self-settled trust did not constitute a spendthrift trust entitled to exclusion under relevant state law. *Goff,* at p. 580

The Circuit Court cited the House and Senate Reports accompanying the respective bills which explained: "Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restrictions is enforceable under applicable nonbankruptcy law." In addition, in comparing the proposed Code to the old Act, the House Report further explained: "The bill also continues over the exclusion from property of the estate of the debtor's interest in a spendthrift trust to the extent the trust is protected from creditors under applicable State law." H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 369 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787.

The *Goff* Court held that the Employment Retirement Income Security Act of 1974 (ERISA) qualified Keogh plan could not be viewed as a spendthrift trust because the settlors had created what was in essence a revocable trust for their own benefit. The *Goff* Court focused on the nature of the plan and found that participation in the plan was strictly voluntary

and terminable at will by the settlor/beneficiary who could withdraw all or nearly all the money paid in. The court found:

> Here, as in [*In re*] *Witlin* [640 F.2d 661 (5th Cir.1981)], appellant-debtors attempted such a revocable trust for their own benefit. They retained the freedom to withdraw their Keogh plan assets, yet purported to insulate those assets from their creditors. If this dichotomous treatment were to be recognized, the strong common law policy of spendthrift trusts, as well as the Bankruptcy Code's intent, would be subverted. Debtors could shelter funds in Keogh plans immediately before declaring bankruptcy—as did the Goffs with at least some of their funds—and immediately after discharge of all debts withdraw such funds for their own benefit. Whatever might be the law in a nonbankruptcy setting involving ERISA's provisions we hold that neither law nor equity would afford self-settled Keogh plans "spendthrift trust" exemption in bankruptcy. *Goff,* at p. 588

The debtors in *Goff* argued that since employees may quit their employment post-bankruptcy and thus be entitled to withdraw their pension contributions under ERISA, any bankruptcy distinction made on the basis of the revocable, self-settled nature of self-employed pension plans is arbitrary. The Circuit Court disagreed: "In analyzing the effectiveness in bankruptcy of spendthrift provisions in pension plans, the courts have generally concluded that those contained in employer-created plans were effective, similar provisions in self-settled plans were not." *Goff,* at p. 589.

In the case of *In re Graham,* 726 F.2d 1268 (8th Cir.1984), the debtor, a physician, was the sole shareholder, director and officer of the professional corporation that derived its income from Graham's services. Distribution under the plan would begin after the participant reaches 65 or terminates services with the employer. On the date the bankruptcy petition was filed the debtor's fully vested accrued benefits under the plan were $150,000.00, attributable to corporation contributions on his behalf. Graham argued that "applicable nonbankruptcy law" under § 541(c)(2) includes ERISA which has been construed as precluding garnishment of benefits under a qualified plan by a general creditor of a plan beneficiary. The court agreed with the *Goff* decision and held that Congress intended to exclude only trust funds in the nature of valid spendthrift trusts.

> The change in the scope of property of the estate effectuated by the new Bankruptcy Code, the legislative history of § 541(c)(2), the exemption provision of ERISA all convince us that Congress did not intend "applicable nonbankruptcy law" to include ERISA. Rather, Congress only intended by § 541(c)(2) to preserve the status of traditional spendthrift trusts, as recognized by state law, enjoyed by the old Bankruptcy Act. *Id.*

The Eighth Circuit found that Congress intended not only that Keogh plans would be property of the estate but that any exemption would be limited.

> There is no indication whatever that Congress intended § 541(c)(2) to be a broad exclusion which would apply to keep all debtors' entire ERISA plan benefits out of the estate. To the contrary, pension benefits are specifically treated under the Code's exemption provision, clearly indicating that they were intended and assumed to be part of the estate ... It was with private plans particularly in mind that the Commission on Bankruptcy Laws proposed the reasonable support limitation, because of the well-known fact that a corporate officer or a member of a professional corporation may be entitle to vested pension benefits aggregating hundreds of thousands of dollars... We thus see a coherent scheme regarding a debtor's pension rights under the Code consistent with the Code's general policy. The question of pension rights is dealt with as a matter of exemption. A debtor's interest in pension funds first comes into the bankruptcy estate. *To the extent they are needed for a fresh start they may then be exempted out.*

*Graham* at pp. 1272–1273 (Emphasis Added) *Id.*

For further expansion and adoption of the *Goff* and *Graham* conclusion that Keogh plans are not excluded from property of the estate, see: *In re Daniel*, 771 F.2d 1352 (9th Cir.1985) and *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985). But contra, see *In re Threewitt*, 24 B.R. 927 (D.Kan.1982); and *Comment, Retirement Plan Assets: The Retention Rights of an Oklahoma Debtor in Bankruptcy* 20 Tulsa Law Journal 589 (Summer, 1985), the conclusion of which this Court rejects.

### B

■ Next the Court shall determine whether the Keogh Plans are exempt under 11 U.S.C. § 522(b)(2)(A) as property exempt under Federal law other than § 522(d). Section 522(b)(2)(A) provides that a debtor in a state which has opted out of exemption provisions of § 522(d), such as Oklahoma, may claim property exempt under other federal laws.[2] The House and Senate Reports on § 522(b)(2)(A) provide a list of property that can be exempted under federal laws. In the case of *In re Goff*, supra, the Fifth Circuit Court found that Congress did not intend to include ERISA-qualified plans among those exempt under "other federal law". The Court noted the absence of ERISA from the illustrative list and determined that ERISA was not merely overlooked by accident:

> Given the extensive and general reach of ERISA-qualified plans, it is highly improbable that Congress intended their inclusion without mention in the Section 522(b)(2)(A) exemption in the midst of a listing of significantly less comprehensive and less well known statutes. *Goff,* at p. 585

Also see *Johnson v. Fenslage*, 724 F.2d 1138 (5th Cir.1984).

The case of *In re Graham*, supra, also addresses the question of whether self-employed debtors' interest in their tax qualified Keogh retirement plans are exempt under "other federal law". The Eighth Circuit Court adopted the rationale of *Goff* and similarly held that the debtor's interest in the trust funds is property of the estate and that an exemption may not be claimed under § 522(b)(2)(A).

The court compared the federal laws listed in the legislative history with the ERISA provisions and found them to be significantly distinguishable.

> There is a conceptual distinction between the property exempted by the listed laws and the property covered by ERISA. The pensions, wage, benefits and payments included in the illustrative list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. In sharp contrast, ERISA regulates employer pension systems. *Id.*

Also see *In re Daniel,* supra, and *In re Lichstrahl,* supra. The Ninth and Eleventh Circuits have similarly held that Keogh and other ERISA qualified plans are not exempt pursuant to § 522(b)(2)(A) as "other federal law". Contra see *In re Hinshaw,* 23 B.R. 233 (Bankr.D.Kan.1982).

### C

■ Finally, the Court shall determine whether the Keogh Plans are exempt under Oklahoma law. The Oklahoma exemption provisions of Title 31 of the Oklahoma Statutes do not include an exemption for pension plan assets. The Debtor claims an exemption in his interest in the Keogh Plans under Tit. 60 Okla.Stat. §§ 326–328. Section 326 provides that pension plans qualified for the exemption purposes shall not be construed as violating the rule against perpetuities or any rule against restraints on alienation provided certain

---

**2.** The debtor must claim his or her exemption, if at all, under the scheme of 11 U.S.C. § 522. If state law allows the debtor to make the choice, he or she may choose between the federal exemptions specifically set out in 11 U.S.C. § 522(d) and those provided by other federal laws and state law. Oklahoma, however, under the authority of 11 U.S.C. § 522(b)(1) does not allow the debtor to choose the federal exemptions of 11 U.S.C. § 522(d). See Okla.Stat. Tit. 31 § 1(B).

conditions are met. Section 327 provides that a qualified pension plan may contain an anti-alienation clause and additionally an exemption clause. Section 328 provides that if a qualified plan contains both a clause prohibiting the alienation or encumbrance by any person having an interest in the plan and a clause exempting the interest from garnishment, attachment, execution or the claims of creditors,

> Any person having an interest in any such plan ... shall have no right to alienate or encumber such right or interest in any manner contrary thereto, and the interest of any such person in any such plan ... shall be exempt from garnishment, attachment, execution or the claims of creditors.

The only reported Oklahoma case interpreting §§ 327 and 328 is *Patee v. Patee*, (In re Patee), 664 P.2d 1035 (Okla.1983). In *Patee* the issue was whether the proscriptions against alienation or encumbrance of an interest and the exemption of an interest are solely for the benefit of the employee or also for the benefit of a named beneficiary. The court held that §§ 327 and 328 are applicable to the named beneficiary and that the beneficiary takes the interest free form any claims that might be filed against the decedent's estate. The plan was found to contain the proscriptions required by § 327. The retirement plan in the *Patee* case was established by the decedent's employer, it was not a Keogh self-employed plan.

In the instant case, the debtor argues in his Supplemental Brief of December 5, 1985, that there are only two conditions which must be met in order to exempt an interest in any pension plan. According to the debtor, first, the plan must qualify for tax exempt status and second, the plan must contain a provision against voluntary or involuntary alienation of the interest. In this case the qualification of both the Price and the Sooner Keogh Plans for tax exemption purposes under the ERISA is not in dispute. See Supplemental Brief of the Trustee wherein the Trustee admits that the plans and all amendments were drafted to conform to ERISA and that the Internal Revenue Service issued favorable determination letters in support of the plans. That both plans contain anti-alienation clauses is likewise not in dispute. See Joint Exhibit 3 Section 4.3 of the Sooner Trust and Joint Exhibit 1 Section 9.5 of the Price Plan.

It is unlikely that the Oklahoma legislature intended for every retirement plan that qualified for tax exemption purposes and contains proscriptions against alienation and encumbrance to be exempt from claims of creditors. A crucial distinction must be made between a Keogh Plan and general pension plans. A Keogh Plan has an important aspect not found in general pension plans—Keogh plan is essentially a self-settled spendthrift trust. A spendthrift trust is one that is created by a third party for the support and maintenance of a beneficiary. It is well-settled law that a settlor may not create a spendthrift trust for his or her own benefit. If the settlor, the employer who created the plan, is also the beneficiary, the trust is valid but the spendthrift clause is void as to present and future creditors of the settlor/beneficiary. It has been said that nowhere will a beneficiary of a self-settled trust be protected against creditors by spendthrift provisions in his own trust. See *Attachment of Keogh Plan Assets—A Confusion in the Law and the Courts*, 61 Taxes 525, 529–531 (Aug. 1983); *Recent Decisions*, 37 Va. L.Rev. 447, 460 (1951); Restatement of Trusts § 157 (1935).

The bankruptcy courts have held that Keogh Plans may not be exempt from claims of creditors under federal or state law. Creditors of the beneficiary of a self-settled spendthrift trust may satisfy their claims against the beneficiary because of the strong public policy that will prevent any person from placing his property in a revocable trust for his own benefit which would be exempt from creditors. Such a trust may be created but it is not enforceable against the debtor's creditors or the bankruptcy trustee. See *In re Lichstrahl*,

supra; *In re Goff,* supra; *Judson v. Witlin,* 640 F.2d 661 (5th Cir.1981).

Considering now the matter before the Court these principles will be applied to the facts of this case. This case involves two self-employed retirement plans and trusts in which the self-employed debtor is both settlor and beneficiary. In both Keogh Plans the debtor retains the right to terminate the trust and withdraw the funds at any time. (See Joint Exhibit 3 and 4 section 3.5 and Joint Exhibit 1 section 4.7). The only penalty is the payment of back taxes and tax penalties that arise form the ERISA qualification under I.R.C. § 401(a). The Court finds that the tax penalties are insufficient to negate the revocable nature of the trust, the Debtor retains substantial control over the trust res. The Court finds that the moneys held in trust pursuant to the Keogh Plans are in effect moneys which presently belong to the Debtor because they are derived from profits of the Debtor's medical partnership. If the profits had been distributed directly to the Debtor they would be subject to attachment. The Debtor should not be able to place those funds out of the reach of creditors pursuant to a self-settled spendthrift trust.

The intention of the legislature in enacting Tit. 60 Okla.Stat. §§ 326–328 was to protect an individual's right to periodic income upon retirement to the same extent that such income was protected while the individual was producing income. Based on all of the foregoing, the Court holds that Keogh Plans and the interest of debtors in Keogh Plans are not exempt under Oklahoma law. The Court believes that this construction is consistent with the purpose of the Oklahoma legislature in promulgating § 328 exemption of an interest in certain retirement plans. Accordingly,

the Court finds that the interests of the Debtor in the Price Keogh Plan and Trust and the Sooner Keogh Plan and Trust are not exempt under Oklahoma law.

## II

The second question presented is whether the computer and printer constitute tools of the trade of the debtor and thus are eligible for exemption under Oklahoma law.

The applicable Oklahoma exemption statute, Okla.Stat. Tit. 31 § 1, in effect at the time this case was filed provides:

A. Except as otherwise provided in this title and notwithstanding subsection (B) herein, the following property shall be reserved to every person residing in the state, exempt from attachment or execution of every other species of forced sales for the payment of debts, except as herein provided ...

6. All tools, ... used in any trade or profession of such person or a dependent of such person.[3]

The law regarding tool of trade exemption was laid down by this Court in *Ragsdale v. Northeastern Production Credit Association (In re Ragsdale),* Bankr. No. 83–00378 (Bankr.N.D.Okla.1986). In *Ragsdale,* the Court found that: "Determination of the qualification of property for exemption and lien avoidance under 11 U.S.C. §§ 522(f) must be made on a case by case basis with close scrutiny of the particular facts and circumstances of each case."

The Court further found that tool of trade exemption is granted to a debtor for the purpose of protecting and continuing the debtor's trade. The Court must then determine the nature of the Debtor's trade. Upon reviewing the Court's rationale in *Ragsdale,* the authorities cited therein and

**3.** Okla.Stat. Tit. 31 § A(5) and (6) were amended April 3, 1984 to provide as follows:

5. ~~All implements~~ Implements of husbandry ~~used upon~~ necessary to farm the homestead;
6. ~~All tools~~ Tools, apparatus and books used in any trade or profession of such person or a dependent of such person;

There is no legislative intent either expressed or necessarily implied to make this amendment retroactive, therefore the amendment applies prospectively. See *McNair v. Knott,* 302 U.S. 369, 58 S.Ct. 245, 82 L.Ed. 307 (1937); *Greene v. United States,* 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); *Rea v. Wichita Mortgage Corp.,* 747 F.2d 567 (10th Cir.1984).

various additional authorities, the Court concludes that under the facts and circumstances of this case the Debtor's only trade for purposes of exemption is his medical practice. Accordingly, the Court finds that the computer and printer do not qualify as exempt property as tools of the trade of the Debtor.

### III

The final question presented is whether the watch, gold chain and pendant constitute wearing apparel and thus are eligible for exemption under Oklahoma law.

The Debtor claims his watch, gold chain and $10.00 gold piece as exempt pursuant to Okla.Stat. Tit. 31 § 1(A)(7) which provides:

A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided: ...

7. All books, portraits and pictures, and wearing apparel, that are held primarily for the personal, family or household use of such person or a dependent of such person.

No reported Oklahoma decision has interpreted "wearing apparel" under Okla.Stat. Tit. 31 § 1(A)(7) and determined whether the term includes jewelry. A 1925 Oklahoma Supreme Court decision, *Morrissey v. Carter*, 113 Okl. 182, 240 P. 727 (1925) addressed the issue in interpreting a prior statute, Comp.St. 1921 § 1224 which provided that "wearing apparel" did not become property of a decedent's estate available for payment of debts. In *Morrissey v. Carter, Id.*, the Supreme Court found that "wearing apparel" is not confined to clothing but includes ornamentation. The Court held that a watch and chain may be wearing apparel.

In *Wikle v. Western*, 642 F.2d 1139 (1981), the Ninth Circuit found that a four (4) carat emerald cut diamond "replacement engagement ring" was exempt. However, the Court was careful to limit the holding to the particular facts of the case. The Court specifically held that the decision should not be interpreted as making expensive diamonds worn as mere ornaments exempt. The allowance of the diamond ring exemption was made pursuant to the Courts finding that the engagement ring had great sentimental value and it was not just an expensive ornament. The Court noted with approval two other California decisions. In the *Estate of Millington*, 63 Cal.App. 498, 218 P. 1022 (1923), it was held that expensive diamonds held as mere ornaments were not exempt. In *Los Angeles Finance Co. v. Flores*, 110 Cal.App.2d Supp. 850, 243 P.2d 139 (1952) the Court established standards for determination of eligibility for wearing apparel exemption. The Court found:

The determination of whether or not a certain article is exempted in the hands of a debtor ... involves a determination of whether or not under all the circumstances *that article* is necessary to be worn by *that debtor ... Id.*

Understanding that exemption provisions are to be liberally construed, this Court has previously found that the purpose of exemption statutes is to provide a debtor with the necessities for a fresh start but not a head start. See *Ragsdale, supra.* The basis for exemption laws is that by providing a debtor to retain a minimum level of property, the debtor and his or her family will not be completely destitute and thus a burden to society.

Under the facts and circumstances of this case the Court finds that the watch constitutes wearing apparel for exemption purposes. The gold chain and gold ten-dollar coin pendant, however, represent more than just ornamentation and wearing apparel. They represent an investment. Accordingly, the Court finds that the gold chain and pendant do not qualify as exempt property as wearing apparel.

AND IT IS SO ORDERED.