**In re Ronnie J. KIDD, Debtor.**

**Bankruptcy No. 86–00844.**

United States Bankruptcy Court,
E.D. Oklahoma.

March 3, 1987.

James R. Adelman, Tulsa, Okl., Trustee.

Robert Inglish, Okmulgee, Okl., for First National Bank of Roland.

A. Camp Bonds, Jr., Muskogee, Okl., for debtor.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On December 3, 1986, the U.S. Bankruptcy Court for the Eastern District of Oklahoma conducted a hearing in the Bankruptcy Case of RONNIE J. KIDD, d/b/a OKLAHOMA GAS AND EASTERN OKLAHOMA GAS (DEBTOR). DEBTOR'S claimed exemptions and Motion To Avoid Liens are at issue. The exemption claims prompted Objections by JAMES R. ADELMAN, Trustee, and THE FIRST NATIONAL BANK OF ROLAND.

We have reviewed the pleadings and have listened to the presented evidence and arguments of counsel and FIND:

### FINDINGS OF FACT

1. This Court has jurisdiction over this "core" proceeding. 28 U.S.C. § 157(b).

2. DEBTOR is engaged in the buying and selling of propane gas. As part of a sale, DEBTOR delivers the propane to a storage tank installed at the purchaser's location. Such tanks are owned by DEBTOR but are financed by the purchaser through a lease, lease-purchase, or purchase agreement. DEBTOR seeks to exempt and avoid the liens on the tanks and other items which correspond to his business based upon 31 Okla.Stat. § 1(A)(6) and 11 U.S.C. § 522(f). These items are more specifically identified as:

| ITEM | QUAN-TITY | VALUE |
|---|---|---|
| (a) Leased or lease-purchase storage tanks | 29 | $120/each |
| (b) "sold" 250 gallon tank | 5 | —— |
| (c) Storage tank | 1 | $5,000 |
| (d) Storage tank | 1 | $2,500 |
| (e) Storage tank | 1 | $1,500 |
| (f) 500 gallon tanks | 3 | $1,250/each |
| (g) 1000 gallon tank | 1 | $400 |
| (h) Miscellaneous tools and office furniture | | $400/total |
| (i) Accounts Receivable | | $200 |

3. DEBTOR also claims an exemption for a 1979 International Harvester Diesel Pickup pursuant to the provisions of 31 Okla.Stat. § 1(A)(12). Carco International has a properly perfected security interest in the pickup. All parties agree that the value of the pickup is less than the debt owed thereon.

4. The DEBTOR'S Motion To Avoid Liens and Claim For Exemptions, with corresponding Objections, are hereby consolidated for purposes of judicial economy and expediency.

## CONCLUSIONS OF LAW

A.  Consolidation is appropriate because of the interlocking requirements of 11 U.S.C. § 522(f) and 31 Okla.Stat. § 1.  Exemption status must be obtained prior to any lien avoidance consideration.

B.  The DEBTOR claims an exemption for all items, except the diesel truck, as "tools of the trade."  Oklahoma's "tools of the trade" exemption is found in 31 Okla. Stat. § 1(A)(6) as follows:

"6.  Tools, apparatus, and books used in any trade or profession of such person or a dependent of such person;"

Such exemption exists when a Debtor can establish: (1) a trade or profession; *and* (2) that the tools or apparatus are reasonably necessary to perform such trade or profession.

C.  DEBTOR has filed for relief under the provisions of Title 11, Chapter 7 of the United States Bankruptcy Code.  Generally speaking, the undeniable purpose of Chapter 7 is to allow a debtor to retain exempt property, liquidate non-exempt assets to pay creditors, and discharge any remaining debts.  11 U.S.C. §§ 704, 726 and 727. Conversely, reorganization of a business is obtained through the provisions of Title 11, Chapter 11 of the United States Code.

The Oklahoma exemption relating to "tools of the trade" is a *personal* exemption designed to assist a debtor's "fresh start."  It has long been established that exemption statutes are to be liberally construed.  *State v. Brown*, 92 Okl. 137, 218 P. 816 (1923).  Such a rule of construction is necessitated because of the statutes' ambiguity, antiquity and inability to dovetail with a bankruptcy scenario.  Not surprisingly, a corresponding rule has emerged which essentially provides that exemption statutes will be applied on a case by case basis.  *Ragsdale v. Northeastern Production Credit Association* (In Re Ragsdale), Bankr. No. 83–00378 (Bankr.N.D.Okla. 1986); *In Re Goldberg*, 59 B.R. 201 (Bankr. N.D.Okla.1986).

■  Bankruptcy Courts defining "tools and apparatus" for exemption and lien avoidance purposes have achieved very little uniformity.  The definitions and interpretations vary widely and are of de minimis value outside of the particular bankruptcy case.  See *In Re Wineland*, 3 F.Supp. 796 (1933); *Smith v. Roads*, 29 Okl. 815, 119 P. 627 (1912); *Brummage v. Kenworthy*, 27 Okl. 431, 112 P. 984 (1910); *In Re Goldberg*, supra.  However, a two pronged concept runs throughout the cases.  First, a Debtor must establish a trade or profession.  Second, the claimed exemption must be an item necessary to continue in that trade or profession.

■  The better view of what constitutes a "trade or profession" is that, like the exemptions, it is *personal* in nature.  In other words, a business such as a sole proprietorship is not a trade or profession. DEBTOR'S business is appropriately viewed as a sole proprietorship engaged in the buying and selling of propane.  Such business is not *personal* to DEBTOR and is not a "trade or profession" as envisioned by the Oklahoma exemption statutes. Therefore, DEBTOR'S claimed exemptions for "tools of the trade" are denied since they relate to his business and not his personal trade or profession.  The appropriate method for reorganizing a business, such as a sole proprietorship, is found in Title 11, Chapter 11, as previously mentioned.  Review of the applicability of 11 U.S.C. § 522(f) is not required because of DEBTOR'S inability to exempt the property under 31 Okla.Stat. § 1(A)(6).

D.  Additionally, DEBTOR claims an exemption for a 1979 International Harvester Diesel Pickup pursuant to 31 Okla.Stat. § 1(A)(12).  The debt owed on the truck exceeds its value.  The basis for the exemption objection is founded upon the case of *In Re McCoy*, 643 F.2d 684 (10th Cir.,1981), where the Court held:

"That the exemption granted under Oklahoma Statute finding automobile exemption for Oklahoma debtors extended to *debtor's equity interest* in the automobile rather than to the vehicle itself and Statute did not reserve to the bankrupt the very vehicle held by him in every instance where his *equity interest* was less than $1500."  (emphasis added)

However, the decision was based upon the previous Oklahoma Statute which read:

"One motor vehicle having an equity value not to exceed $1,500.00.

1977 Oklahoma Session Laws, Chapter 238, § 1, § 1(10), and § 2, § 4 (Fourth), amended and repealed, respectively, Oklahoma Session Laws, Chapter 342."

The Court in *McCoy* briefly addressed the 1980 amendment by stating their belief that "interest" meant "equitable interest." The comments are appropriately viewed as dicta.

The exemption statute in question, 31 Okla.Stat. § 1(A)(12), was amended to exempt:

"12. Such person's *interest,* not to exceed $1500 in value, in one motor vehicle." (Emphasis added)

The Trustee contends that when the questioned property's debt exceeds its value, the DEBTOR has no "interest" in the property under 31 Okla.Stat. § 1(A)(12). Resolution of the present controversy rests in our statutory interpretation of "interest."

The word "interest" is generally defined expansively for legal purposes. For example:

(1) The Oxford English Dictionary, Volume 5, Oxford University Press, London, first published 1933, reprinted in 1961, 1970:

"1. The relation of being objectively concerned in something, by having a right or title to, a claim upon, or a share in."

(2) Black's Law Dictionary, 5th Edition, West Publishing Company, 1979:

"The most general term that can be employed to denote a right, claim, title or legal share in something."

The definitions establish, at a minimum, that an "interest" reflects virtually any ownership in property.

The Oklahoma Legislature intended to effectuate a specific result by amending the exemption statute. A word user's right to control a word to communicate an intended meaning was memorialized in Lewis Carroll's classic story of "Through The Looking Glass and What Alice Found There," (1963, McMillan Company, New York), as follows:

Chapter 6: Conversations between Humpty Dumpty and Alice:

"*When I use a word,*" Humpty Dumpty said, in rather a scornful tone, "*it means just what I choose it to mean—neither more nor less.*"

"The question is," said Alice, "whether *you* can make words mean so many different things."

"The question is," said Humpty Dumpty, "which is to be master—that's all." (Emphasis added)

As master, the Legislature's obvious purpose was to inject some flexibility into the exemption statute. The previous statute referred to "equity" which represents a debtor's interest in property only to the extent that its value exceeds the debt. Judicial interpretation appropriately denied exemptions when no "equity" existed in the property. *McCoy.* As amended, the statute now mirrors the motor vehicle exemption provided in 11 U.S.C. § 522(d)(2). The amendment therefore allows dovetailing with the remainder of the U.S. Bankruptcy Code.

A brief review of cases interpreting the federal exemptions regarding "interest" is helpful. The Federal motor vehicle exemption allows:

"The debtor's interest, not to exceed $1200 in value, in one motor vehicle." 11 U.S.C. § 522(d)(2)

Similarly, the Federal exemption for household goods permits:

"The debtor's interest, not to exceed $200 in value in any particular item, or $4000 in aggregate value ..." 11 U.S.C. § 522(d)(3).

In the case of *In Re Bland,* the U.S. District Court for the Northern District of Georgia affirmed the Bankruptcy Court's granting of summary judgment for debtors. The U.S. Court of Appeals for the Eleventh Circuit affirmed. The dispute centered on Georgia's household exemption statute which differs from the federal exemptions by placing a $3500 cap on the exemptions. After granting a rehearing en banc, 768 F.2d 1212, the Court of Appeals

held that under the Georgia statute, a debtor has an "interest" in property even though no equity exists. The Court distinguished the case of *Wallis v. Clerk, Superior Court DeKalb County*, 166 Ga.App. 775, 305 S.E.2d 639 (1983) on the grounds that the present controversy involved a nonpossessory, nonpurchase-money security interest in property subject to potential lien avoidance under 11 U.S.C. § 522(f). The *Wallis* case involved a *purchase money* claim on homestead to which a debtor was denied an exemption for lack of an "interest." Since the property was purchase money, debtor could not exercise lien avoidance. The *Bland* Court's rationale indicates existence of an "interest" if allowance of the exemption will entitle a debtor to further relief under the Bankruptcy Code.

The Federal exemption for motor vehicles [11 U.S.C. § 522(d)(2) ] was interpreted by the U.S. Bankruptcy Court for the Eastern District of Michigan to grant a debtor an exemption in a truck valued at $650 although subject to a non-purchase money security interest of $1,106.95. *In the Matter of Meyers*, 2 B.R. 603 (Bankr.E.D.Mich.1980). The Debtor was permitted to redeem the pickup for its fair market value pursuant to 11 U.S.C. § 722.

■ The relevancy of these cases lies in their determination that interpretation of an exemption referring to an "interest" does not rest upon the existence of debtor's equity in the property. Rather, an "interest" exists when, at a minimum, it entitles a debtor to further rights under the Bankruptcy Code. An "interest" in a motor vehicle thus exists even when a debtor retains no equity in the property since the existence of the exemption will permit utilization of additional rights under the Bankruptcy Code such as 11 U.S.C. § 722.

The Oklahoma Legislature, by amending 31 Okla.Stat. § 1(A)(12), has provided debtors with a workable exemption from which the debtors may readily avail themselves of the rights and benefits of the U.S. Bankruptcy Code. Our interpretation has the desirable effect of treating all debtors equally by always providing a motor vehicle exemption. Under the previous statute, a debtor with no equity in a motor vehicle would lose the exemption and the resulting access to the Bankruptcy Code. In a Chapter 7 bankruptcy scenario, our interpretation adversely affects only the bankruptcy Trustee since the debtor's rights in the motor vehicle are still subject to any existing secured claims. A Bankruptcy Trustee may retain and sell the motor vehicle only when the vehicle's value exceeds the secured debt, plus debtor's exemption ($1500). After such sale, the debt and the exemption must be repaid and the Trustee may retain the excess for the benefit of the estate. Finally, the "fresh start" premise of the Code is maintained since functioning in modern society necessitates ownership of, or present ability to own, a motor vehicle.

IT IS THE ORDER OF THIS COURT that DEBTOR'S claimed "tools of the trade" exemptions are denied. DEBTOR is granted an exemption to the extent of $1500 in the 1979 IH Diesel Pickup pursuant to 31 Okla.Stat. § 1(A)(12) as to the trustee.