**In re Donald Dean WALKER, a/k/a Donald F. Walker, Debtor.**

**Bankruptcy No. 89–00548–W.**

United States Bankruptcy Court,
N.D. Oklahoma.

Dec. 12, 1989.

Chris Economou, Kurt Glassco, Bond & Glassco, Tulsa, Okl., for debtor.

Kenneth Mather, Tulsa, Okl., for Trustee.

Henry G. Will & Haniball B. Johnson, Conner & Winters, Steven McGrath, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, Okl., for Tulsa County Bar Ass'n Employee Benefits Group as amicus curiae.

## ORDER GRANTING TRUSTEE'S OBJECTION TO EXEMPTION

MICKEY DAN WILSON, Bankruptcy Judge.

On May 4, 1989, there came on for hearing the Trustee's objection to Debtor's claim of exemption of his interest in three retirement annuity plans; after hearing, the matter was taken under advisement. Upon consideration of evidence introduced and received, and of statements, arguments and briefs of counsel, and of the record herein, the Court, pursuant to Bankruptcy Rules 7052 and 9014, finds, concludes and orders as follows.

### FINDINGS OF FACT

On December 29, 1988, Donald Dean Walker a/k/a Donald F. Walker ("Mr. Walker;" "Debtor") filed his petition for relief under 11 U.S.C. Chapter 7 in the Bankruptcy Court for the Eastern District of Oklahoma in Okmulgee, Oklahoma.

With his petition, Debtor filed his Schedule B–2(m) reporting his interest in "3 IRA's (with wife)" valued at $145,169; and his Schedule B–4, claiming exemption of, among other things, "IRA's (with wife)" in the same amount pursuant to 60 O.S. § 327 and 31 O.S. § 1(A)(20).

With his petition, Debtor also filed his Schedules A–2 and A–3 reporting debts of approximately $3,125,530.55 (not counting a $2,000,000 debt listed twice), owed largely as "Co-signer for Oklahoma Crushed Stone" and said to be incurred in 1984 but to be "Disputed." Debtor admitted residing in Tulsa, Oklahoma; all creditors save one were located in Tulsa, Oklahoma; Debtor's attorney resides and works in Tulsa, Oklahoma; there was no reason for filing Debtor's bankruptcy case in the Eastern District of Oklahoma save that Debtor "has been affiliated with Oklahoma Crushed Stone, Inc., which filed a case under Title 11 of the United States Code in the Eastern District of Oklahoma," Petition ¶ 2.

With his petition, Debtor filed his Statement of Financial Affairs for Debtor Not Engaged in Business, whose ¶ 2(c) reports

that in 1974–1981 Debtor was a stockholder, together with unnamed others, in "Superior Services, S.A." providing "Oil Field Services" in "Libya & Panama," and in 1984–1985 was a stockholder, together with one Charles L. Plumer, in the above-mentioned Oklahoma Crushed Stone, Inc. located in Wewoka, Oklahoma. According to Debtor's Statement of Financial Affairs ¶ 2(a), (b) and Schedule of Current Income and Current Expenditures, when Debtor filed his petition in bankruptcy he was employed as "Car Wash Manager" at "The Superior Car Wash, Inc." in Tulsa, Oklahoma, at a salary of $500 per month, and his non-debtor spouse was employed as "Office Manager" at the same place of business at a salary of $2,000 per month. Debtor reported expenses of $2,567.65 per month, of which $1,514.65 went to home expenses, $823 per month went to automobile installment payments, $40 per month went to transportation expenses and $190 per month went to food, clothing, and medical expenses. Debtor's bankruptcy counsel's fee of $1,500 was paid by Debtor's wife, see Statement Pursuant to Rule 2016(b), ¶ 4.

Kenneth G. M. Mather was duly appointed Trustee of Debtor's estate in bankruptcy. Thereafter, venue was transferred to this Court sitting in the Northern District of Oklahoma. Mr. Mather remained Trustee ("the Trustee").

On February 23, 1989, the Trustee filed his "objection to Exemption and Brief in Support," objecting to exemption of all "three IRA's (with wife)" claimed exempt by Debtor. At hearing on May 4, 1989, the parties submitted "Stipulations of Fact ..." and exhibits were introduced and received; thereafter the matter was taken under advisement. On May 25, 1989, Debtor's use of the funds in dispute was restrained pending further order. Before and after the hearing, briefs were submitted by the parties and by The Tulsa County Bar Association Employee Benefits Group as *amicus curiae.*

All three of Debtor's retirement accounts are fully funded solely by Debtor; are sponsored by Transamerica Life Insurance and Annuity Company, whose standard forms describe the accounts as "annuity policies;" contain statements that "To the extent permitted by law, no benefit under this policy will be subject to any claim or process of law by any creditor;" and qualify for tax exempt status under the Internal Revenue Code, see Stipulations ¶¶ 3, 5, 7, 8.

Policy No. 5932399X dated December 28, 1978, is a "Flexible Premium Retirement Annuity," see Trustee's Ex. 3 (policy) p. 1, which the parties describe as a "Keogh Account," Stipulations ¶ 5. In making application for this policy, Debtor described himself as self-employed for 20 years with a retirement date of June 17, 2000, and requested "Flexible Premium Annuity to accommodate an annual deposit of $7500, 10 yr certain and life annuity," Trustee's Ex. 3 (applic. form) p. 1. The policy granted met these requirements. The named beneficiary was "Shirley S. Walker, wife," *id.* The policy provides for payment of a "premium" of $7,500 per year or anything up to three times that amount, Trustee's Ex. 3 (policy) p. 4; a guaranteed interest rate of 3.5% per annum compounded annually, *id.* p. 5; and various charges against amounts in the annuity fund, *id.* pp. 4–5. A statement of account whose closing date was June 30, 1988, shows "Total Contract Value" of $113,790.29 and "Cash Surrender Value" of $108,100.78, Trustee's Ex. 3 (statement of account). Debtor could withdraw part of the annuity fund, or "surrender" (i.e. cash in) the whole of the annuity fund, "at any time before annuity payments begin," Trustee's Ex. 3 (policy) pp. 11–12, upon payment of a withdrawal or surrender charge. The withdrawal or surrender charge was a percentage of the amount withdrawn, the percentage decreasing over the term of the policy from 13% to 15% and ceasing entirely if the withdrawal or surrender were made "at or after the end of the tenth policy year, and the [Debtor] is then age 60 or older," *id.* If the Debtor died before annuity payments began, a "death benefit" would be paid to his beneficiary, in the amount of the full value of the annuity fund, less accounting charges and taxes, but without any withdrawal or surrender charge, Trustee's Ex.

3 (policy) p. 13. These terms appear on a standard printed form numbered 4–585 11–178.

Policy No. 5954498 dated February 1, 1981, is a "Flexible Premium Retirement Annuity" see Trustee's Ex. 1 (policy) p. 1, which the parties describe in backhanded fashion as an "I.R.A.," Stipulations ¶¶ 3, 4. In making application for this policy, Debtor named his employer as "Walker Superior Services" (presumably the same "Superior Services, S.A." mentioned above), described his occupation as "President" for 20 years, and his salary as $180,000 per year. His birth date is given as June 17, 1935, his "Selected Retirement Date" as June 17, 2000. The policy was for "120 Months Certain & Life," with a single (not annual) premium of $3,449.84, the beneficiary named as "Shirley S. Walker, wife." It was remarked that "This is a roll-over of Farmers New World Life Insurance Company Policy No. 2005272. Check No. B 480424 in the amount of $3,449.84 attached." See Trustee's ex. 1 (applic. form) p. 1. A statement of account whose closing date was June 30, 1988, shows "Total Contract Value" of $7,667.94 and "Cash Surrender Value" of $7,209.55, Trustee's ex. 1 (statement of account). The other terms are identical to those of Policy No. 5932399X above, and are set forth on the identical form numbered 4–585 11–178.

Policy No. 5970230 dated February 1, 1982, is a "Retirement Annuity Policy," see Trustee's ex. 2 (policy) p. 1, which the parties describe as "The second IRA," Stipulations ¶ 4. In making application for this policy, Debtor described himself as "President" but specified no employer; and stated his "Selected Retirement Date" as June 17, 2000. The policy was for "120 Months Certain & Life" with an annual premium of $2,000 or anything up to $25,000, the beneficiary named as "Shirley S. Walker, wife." See Trustee's Ex. 1 (policy) p. 2A, id. (applic. form). A statement of account whose closing date was June 30, 1988, showed "Total Contract Value" of $23,710.84 and "Cash Surrender Value" of $22,359.15, Trustee's Ex. 1, statement of account. The other terms are substantially similar to the terms of the other policies described above,

although the form is somewhat different and is numbered 4–585 11–180.

Any "Conclusions of Law" which ought more properly to be "Findings of Fact" are adopted and incorporated herein by reference.

## CONCLUSIONS OF LAW

This is a core proceeding under 28 U.S.C. 157(b)(2)(B), 11 U.S.C. § 522(b), (d).

The facts may be summarized as follows. Debtor has been in the business of providing oil field services, as sole proprietor or as employee of a close corporation, for nearly thirty years; and more recently has been engaged as a partner in a rock-crushing business. As recently as 1981, Debtor drew a salary of $180,000 per year. Now, both the oil field service business and the rock-crushing business are defunct; Debtor is working at a car wash for some $6,000 per year and could not afford to pay his bankruptcy attorney without help from his working wife. Debtor is 54 years old and did not plan to retire for another eleven years; but his present job is unremunerative and his future job prospects are unknown to this Court. Debtor may owe over $3,000,000 in debts, although it is possible that he owes much less, since most of his debts are disputed and Debtor, even if liable, is only one of several co-debtors (e.g. Charles L. Plumer) who may be liable instead of or along with Debtor himself. Debtor had, and seeks to retain, funds in individual retirement annuities whose cash surrender value totals $137,669.48. The question before the Court is whether Debtor's creditors, represented by Debtor's bankruptcy Trustee, shall have access to those funds first.

Debtor claims the funds exempt as monies reserved for his retirement support. One might expect a Court confronted with such a claim to attempt to determine the extent to which the funds are effectively reserved and reasonably necessary for Debtor's retirement support—striking a balance between Debtor's legitimate expectations and requirements at the end of his working life and the right of creditors to

have their just debts paid—and apportion the funds accordingly. These rival interests may sometimes be difficult to pinpoint and reconcile—as here, where Debtor has certainly suffered a precipitous drop in income, yet his actual debt burden and future income prospects are unclear and he is yet eleven years from retirement age—but at least the attempt would fairly consider both parties' interests and so should not go too far wrong in minimizing harm to both. As it happens, such a balancing of interests is the one issue *not* presented to the Court herein. Instead, the Court is confronted with a maze of technicalities—concerning exclusion from the bankruptcy estate, the preemptive force of Federal statutes, the meaning of "void," the rules of severability, and the supposed helplessness of courts of equity to remedy legalized fraud— which, each party asserts, entitles him and him alone to *all* of the funds in dispute, regardless of Debtor's needs on the one hand or creditors' rights on the other hand. Each party seeks his own advantage under the laws available to him, as is to be expected in our adversary system; and this Court likewise must take the law as it finds it. Yet the Court approaches this inconsiderate, all-or-nothing exercise with some distaste.

The Court observes that the Trustee's initial "Objection ..." was predicated on the effect of the Employee Retirement Income Security Act ("ERISA") on the treatment of these retirement funds in bankruptcy. Debtor's "Response ..." thereto asserted that ERISA did not apply to these particular retirement annuities. The Trustee in his "Reply ..." and "Brief ..." appears to concede that the IRAs are not within the provisions of ERISA. It is not clear whether the parties seriously dispute the applicability of ERISA to the Keogh plan. For purposes of this opinion, and with reservations to be set forth below, the Court will treat all three retirement annuities herein, both IRAs and Keogh plan, as non-ERISA-qualified plans. Under these circumstances the *amicus curiae's* extensive arguments concerning interaction among ERISA, the Bankruptcy Code and Oklahoma laws appear to be moot.

The treatment of retirement funds in bankruptcy depends on (1) whether the fund in question is brought within the bankruptcy estate in the first place under 11 U.S.C. § 541; and if it is, (2) whether the fund can thereafter be removed by Debtor from the bankruptcy estate by exemption under 11 U.S.C. § 522.

11 U.S.C. § 541 provides in pertinent part that "(a) The commencement of a case under ... this title creates an estate ... comprised of all the following property, wherever located and by whomever held; (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." The Trustee is the representative of the estate, 11 U.S.C. § 323(a). Therefore, the Trustee takes whatever interest Debtor had in these retirement annuities, "[e]xcept as provided in subsection ... (c)(2)...." 11 U.S.C. § 541(c)(2) provides that "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." This provision operates to exclude from the bankruptcy estate "a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law;" but it is held that the "trust" must be a spendthrift trust, and the "applicable nonbankruptcy law" must be State law governing spendthrift trusts, *In the matter of Goff*, 706 F.2d 574 (5th Circ.1983); *In re Graham*, 726 F.2d 1268 (8th Circ.1984); *In re Lichstrahl*, 750 F.2d 1488 (11th Circ.1985); *In re Daniel*, 771 F.2d 1352 (9th Circ.1985); *In re Goldberg*, 59 B.R. 201 (B.C., N.D. Okla.1986). Thus, only spendthrift trusts whose restrictions on transfer are enforceable under applicable State law can be excluded from a bankruptcy estate under 11 U.S.C. § 541(c)(2).

60 O.S. § 175.25 provides for the creation of trusts with restraints on alienation of income and principal by the beneficiary, describable as "spendthrift trusts," 60 O.S. § 175.25(A), (F). The statute permits such trusts to be enforceable within

specified limits, such that trust income remains subject to certain types of creditor claims, 60 O.S. § 175.25(A)(1), and in any event is not protected in excess of $5,000 per year, 60 O.S. § 175.25(A)(2). The statute further provides that "[t]he right of any beneficiary of a trust to receive the principal of the trust or any part of it, presently or in the future, shall not be alienable and shall not be subject to the claims of his creditors," 60 O.S. § 175.25(D). However, "[n]othing in this Act shall authorize a person to create a spendthrift trust or other inalienable interest for his own benefit. The interest of the trustor as a beneficiary of any trust shall be freely alienable and subject to the claims of his creditors," 60 O.S. § 175.25(G). The statute is clear: trusts with restraints on alienation are generally labeled "spendthrift trusts;" such restraints on alienation of trust *income* are enforceable against certain types of claims and within certain monetary limits; such restraints on alienation of trust *principal* are enforceable without such restrictions; but restraints on alienation of income or principal in self-settled trusts are not enforceable at all. Such conditions on enforceability of self-settled spendthrift trust provisions guard against fraud and serve an important public policy, *In re Goldberg*, 59 B.R. p. 206. The Keogh and IRA-type annuities in this case were created by Debtor with his own funds and primarily for his own benefit (though his wife would become "beneficiary" on his death). If the Keogh and IRA-type annuities in question here are spendthrift trusts at all, they are self-settled spendthrift trusts whose restrictions on transfer are not enforceable under Oklahoma law.

In *Greening Donald Co., Ltd. v. Oklahoma Wire Rope Products, Inc.*, 766 P.2d 970 (Okl.1988), the Oklahoma Supreme Court stated that

The crux of appellant's argument is that since an IRA is a trust, and this trust is for the settlor's own benefit, this is a prohibited spendthrift trust under 60 O.S.1981 § 175.25. By definition, because the IRA is established for the settlor's own benefit, it cannot be a spend-thrift trust. There is no merit in the appellant's argument. The argument is simply an attempt at renaming this asset in an effort to avoid the protection authorized by the legislature.

"The *Greening* Court appears to say that, since self-settled spendthrift trusts are *forbidden*, a self-settled trust is not a spendthrift trust at all and is therefore *allowed*! This makes Section 175.25 self-defeating, and is surely not what the Oklahoma Supreme Court meant; but what else it did mean is not clear to this Court," *In re Garrison*, 108 B.R. 760, 769 (B.C., N.D. Okla.1989). However one reads 60 O.S. 1981 § 175.25, it is at least clear that a self-settled Keogh or IRA-type plan or annuity, effectively terminable at the settlor-annuitant's own will, is not to be treated as an enforceable spendthrift trust—either because it is a spendthrift trust of a type whose provisions are not enforceable, *In re Goldberg*, supra, or because it is not a spendthrift trust at all, *Greening Donald Co., Ltd. v. Oklahoma Wire Rope Products, Inc.*, supra—and so is not excluded from the bankruptcy estate by 11 U.S.C. § 541(c)(2). Accordingly, this inquiry ends where it began: the Trustee takes whatever interest Debtor had in these retirement plans pursuant to 11 U.S.C. § 541(a)(1), without interference from 11 U.S.C. § 541(c)(2).

The next question is whether the funds are exemptible from the bankruptcy estate pursuant to 11 U.S.C. § 522. Debtor may exempt from his bankruptcy estate any property that would be exempt from creditor execution under State or Federal non-bankruptcy law applicable on the date of the filing of Debtor's petition in bankruptcy, 11 U.S.C. § 522(b)(1), (2)(A), 31 O.S. § 1(B).

■ The Trustee argues that any State exemptions which might otherwise apply are preempted by ERISA. As noted above, it appears to be agreed that the retirement annuities herein are not themselves governed by ERISA; nevertheless, the Trustee argues that ERISA preempts State exemptions even as to retirement plans not covered by ERISA, because that was the intent

of Congress, and because that is the effect of a decision by this Court, *In re Brown,* 95 B.R. 216 (B.C., N.D.Okla.1989), Covey, J., holding the Oklahoma exemptions "void" as preempted by ERISA. This Court is not persuaded that Congress in enacting ERISA, or Judge Covey in deciding *In re Brown,* supra, supposed that ERISA would preempt and paralyze the operation of State laws even as to retirement plans that ERISA itself did not reach and regulate. State laws are not preempted by ERISA insofar as they deal with retirement plans that are not governed by ERISA. Since the retirement annuities in this case are not governed by ERISA, Oklahoma laws concerning their exemption are not preempted by ERISA. See *In re Ridgway,* 108 B.R. 294, 296 (B.C., N.D.Okla.1989).

■ Debtor claims these annuities exempt under 60 O.S. §§ 326–328 or, alternatively, 31 O.S. § 1(A)(20). In *In re Goldberg,* supra, this Court held that 60 O.S. §§ 326–328 did not exempt a tax-qualified, Keogh-type retirement plan which was also a self-settled revocable spendthrift trust, as a matter of probable legislative intent and public policy; the Court observed that it was "unlikely" that the Oklahoma legislature intended 60 O.S. §§ 326–328 to operate in any manner contrary to "the strong public policy that will prevent any person from placing his property in a revocable trust for his own benefit which would be exempt from creditors," *In re Goldberg,* 59 B.R. p. 206. Since the Keogh and IRA-type annuities in the case now before this Court are indistinguishable from the non-exempt Keogh plan in *In re Goldberg,* supra, it follows that the annuities now before this Court likewise would not be exempt. A different reading and application of 60 O.S. §§ 326–328 was later announced by the Oklahoma Supreme Court in *Greening Donald Co., Ltd. v. Oklahoma Wire Rope Products, Inc.,* supra; and a new exemption statute has been enacted by the Oklahoma legislature, 31 O.S. § 1(A)(20), which exempts:

20. Subject to the Uniform Fraudulent Transfer Act, Section 112 et seq. of Title 24 of the Oklahoma Statutes, any interest in a retirement plan or arrangement qualified for tax exemption purposes under present or future Acts of Congress; provided, such interest shall be exempt only to the extent that contributions by or on behalf of a participant were not subject to federal income taxation to such participant at the time of such contributions, plus earnings and other additions thereon; provided further, any transfer or rollover contribution between retirement plans or arrangements which avoids current federal income taxation shall not be deemed a transfer which is fraudulent as to a creditor under the Uniform Fraudulent Transfer Act. "Retirement plan or arrangement qualified for tax exemption purposes" shall include without limitation, trusts, custodial accounts, insurance, annuity contracts and other properties and rights constituting a part thereof. By way of example and not by limitation, retirement plans or arrangements qualified for tax exemption purposes permitted under present Acts of Congress include defined contribution plans and defined benefit plans as defined under the Internal Revenue Code ("IRC"), individual retirement accounts, individual retirement annuities, simplified employee pension plans, Keogh plans, IRC Section 403(a) annuity plans, IRC Section 403(b) annuities, and eligible state deferred compensation plans governed under IRC Section 457. This provision shall be in addition to and not a limitation of any other provision of the Oklahoma Statutes which grants an exemption from attachment or execution and every other species of forced sale for the payment of debts. This provision shall be effective for retirement plans and arrangements in existence on, or created after the effective date of this act ...

Both 60 O.S. §§ 326–328 as newly interpreted in the *Greening* case, supra, and 31 O.S. § 1(A)(20), unconstitutionally impair contracts entered into before the date of decision of the *Greening* case and the effective date of 31 O.S. § 1(A)(20); see *In re Garrison,* supra. The *Greening* decision is dated November 8, 1988, rehearing denied January 11, 1989; the effective date of 31 O.S. § 1(A)(20) was April 16, 1987.

Most or all of Debtor's debts were incurred no later than the end of 1984. Therefore, 60 O.S. §§ 326–328 as interpreted in the *Greening* case and 31 O.S. § 1(A)(20) are unconstitutional as applied against Debtor's debts herein, and are invalid to that extent.

Whether the entire amounts of the annuities herein should be used to pay claims of all creditors, or should be reserved for satisfaction of claims of only those creditors whose debts were incurred before April 16, 1987 and the balance returned to Debtor, or which creditors' claims were incurred exactly when, or whether or to what extent the funds in the annuities should be charged with payment of administrative expenses, are questions not before this Court at this time.

This disposition of the matter makes it unnecessary to consider other arguments raised by the parties and the *amicus curiae*. However, the Court will entertain a motion to reconsider the questions of the applicability of ERISA to the Keogh plan, inclusion of the Keogh plan within the estate, and ERISA preemption of State exemptions, provided such motion is made timely, is made by a party (since the Court will not determine such weighty issues only on request of an *amicus curiae*), and explains to the Court's satisfaction why such issues are not academic as to the Trustee (who is granted the relief he sought even without modification of the order) and why debtor, who formerly argued that ERISA did not apply, should now be allowed to change his tune. Any such motion shall be filed within ten (10) days of the date of entry of this order; after such time, this order shall be considered final.

Accordingly, the Trustee's objection to exemption of these Keogh and IRA-type annuities must be, and the same is hereby, granted; and Debtor's claim of exemption of said annuities must be, and is hereby, denied and disallowed.

AND IT IS SO ORDERED.