In re Donald Dean WALKER, Debtor.

Donald Dean WALKER,
Plaintiff–Appellee,

v.

Kenneth G.M. MATHER, Trustee,
Defendant–Appellant.

No. 90–5171.

United States Court of Appeals,
Tenth Circuit.

March 26, 1992.

Chris Economou, Tulsa, Okl. (Kurt G. Glassco of Bond Glassco & Hyman, with him on the brief), for plaintiff-appellee.

Thomas A. Creekmore, III of Jones, Givens, Gotcher & Bogan, Tulsa, Okl., for defendant-appellant.

Before ANDERSON and BALDOCK, Circuit Judges, and SAM, District Judge.*

BALDOCK, Circuit Judge.

At issue in this case is whether Plaintiff-appellee Donald Dean Walker's (Debtor) individual retirement annuities (IRA's) and Keogh annuities should be included as property of his bankruptcy estate, and, if included, whether the annuities are subject to exemption from the estate pursuant to the relevant Oklahoma exemption statutes.[1] Under the Bankruptcy Code, virtually all property in which a debtor has a legal or equitable interest at the commencement of the case is included in the bankruptcy estate, see 11 U.S.C. § 541, but a debtor may exempt certain property from the estate, see id. § 522. The Code includes a list of properties which may be exempted, see id. § 522(d), and it allows states to establish separate exemption lists. A debtor may choose either the federal exemption provisions or the state provisions unless he resides in a state that has

---

* Honorable David Sam, United States District Judge for the District of Utah, sitting by designation.

1. Individual Retirement Annuities are self-settled trusts that qualify for tax deferral treatment under I.R.C. § 408(b). "Keoghs," trusts for self-

employed individuals, qualify for tax deferral treatment under I.R.C. § 401(c), (d) and miscellaneous other Code provisions. See Keogh–Smathers Act, Pub.L. No. 87–792, 76 Stat. 809 (1962).

"opted out" of the federal exemption list. *See id.* § 522(b)(1); 3 Collier on Bankruptcy ¶ 522.02, (15th ed. 1991). In states that have "opted out," debtors are limited to the state exemption list. The relevant state in this case, Oklahoma, has "opted out." *See* Okla.Stat.Ann. tit. 31, § 1B (West 1991). Oklahoma bankrupt debtors therefore are limited to the Oklahoma exemptions. *See id.* § 1A (exemptions).

Debtor filed for Chapter 7 bankruptcy protection and claimed two IRA's and a Keogh as exempt from the bankruptcy estate pursuant to Okla.Stat.Ann. tit. 31, § 1A(20). The Oklahoma statute allows debtors to exempt both IRA's and Keoghs provided the investments fully qualify for tax deferral treatment under the Internal Revenue Code. *Id.* The Defendant-appellant Trustee challenged the exemptions, contending that the Oklahoma statute was invalid. In a core proceeding resulting in a published final order, the bankruptcy court ruled in favor of Trustee. *See In re Walker,* 108 B.R. 769 (Bankr.N.D.Okla.1989). Specifically, the court held that the annuities were property of the estate pursuant to § 541 and were not subject to exemption under § 522 because the Oklahoma exemption statute was an unconstitutional impairment of contracts. U.S. Const. art. I, § 10, cl. 1. On appeal, the district court also held that the annuities were part of the estate pursuant to § 541; however, it reversed the bankruptcy court order, holding that the Oklahoma exemption statute did not violate the Contracts Clause.

Trustee appeals from the district court judgment. He contends that the Oklahoma exemption statute is invalid because (1) it is an unconstitutional impairment of contracts, (2) it is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), and (3) it exceeds the scope of authority delegated to the States pursuant to § 522 of the Bankruptcy Code to establish bankruptcy exemptions. In the alternative, Trustee argues that Debtor did not meet his burden of proving that the annuities in question were not overfunded and therefore fully tax exempt. The Trustee did not raise this alternative argument below, and he has not attempted to articulate a reason for us to depart from the general rule that "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). *See also Pell v. Azar Nut Company, Inc.,* 711 F.2d 949, 950–51 (10th Cir. 1983). Therefore, we decline to consider the argument. We have jurisdiction to address the remaining issues on appeal pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 158(d). Upon exercising de novo review of the remaining legal issues, *see First Bank v. Mullet (In re Mullet),* 817 F.2d 677, 679 (10th Cir.1987), we affirm.

## I. The Annuities.

The bankruptcy court made specific findings regarding the annuities in this case. *See* 108 B.R. at 770–772. In sum, the court found as follows: the total cash surrender value of the three annuities was $137,-699.48 as of June 30, 1988; the IRA's were funded fully by the debtor; the Keogh was funded fully by a business which the debtor formerly owned and operated; all annuities qualified for tax deferral treatment under the Internal Revenue Code; and finally, the annuities were not subject to ERISA regulations.[2] These findings were accepted implicitly by the district court, *see In re Walker,* 139 B.R. 31 (N.D.Okla.1990), and they are not challenged here.

## II. Bankruptcy Estate Property.

Before reaching the Oklahoma exemption issues, we must determine whether the annuities in this case should be included in the bankruptcy estate pursuant to 11 U.S.C. § 541. As stated above, § 541 en-

---

**2.** The bankruptcy court found that Debtor's annuities were "non-ERISA-qualified" plans. 108 B.R. at 773. Neither party challenges this finding, and although the record is unclear, we assume that the finding is correct. *See* 29 C.F.R. § 2510.3–2(d) (Department of Labor regulation stating that qualifying IRA is not subject to ERISA regulation); *id.* § 2510.3–3 (1991) (Department of Labor Regulation stating that qualifying Keogh plan that covers only the self-employed individual is not subject to ERISA regulation).

compasses virtually all property in which a debtor has a legal or equitable interest as of the time of the bankruptcy petition. Even properties with underlying agreements which contain restrictions on transfer are included. *See id.* § 541(c)(1)(A). Nevertheless, § 541 contains an exception for "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law...." *Id.* § 541(c)(2).[3] Such anti-alienability provisions remain enforceable under the statute; therefore, a debtor's interest in the trusts does not enter the bankruptcy estate.

■ The circuits are split over the scope of § 541(c)(2)'s exception for anti-alienability provisions that are enforceable under "applicable nonbankruptcy law." Four circuits have held that the provision refers exclusively to state spendthrift trust law. *See Daniel v. Security Pacific National Bank (In re Daniel)*, 771 F.2d 1352, 1360 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488, 1490 (11th Cir. 1985); *Samore v. Graham (In re Graham)*, 726 F.2d 1268, 1273–74 (8th Cir. 1984); *Goff v. Taylor (In re Goff)*, 706 F.2d 574 (5th Cir.1983). We recently rejected the reasoning of the above courts, however, and joined three other circuits in holding that "applicable nonbankruptcy law" is not limited to state spendthrift trust law. *See Gladwell v. Harline (In re Harline)*, 950 F.2d 669 (10th Cir.1991). *See also Vel-*

*is v. Kardanis*, 949 F.2d 78, 81–82 (3d Cir.1991); *Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 601 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *Anderson v. Raine (In re Moore)*, 907 F.2d 1476, 1477 (4th Cir. 1990). Instead, we indicated that "[t]he phrase on its face is clear and broad" and could encompass federal ERISA anti-alienability provisions as well as state provisions aside from spendthrift trust law. *Gladwell*, 950 F.2d at 674.

■ Debtor seizes on the § 541(c)(2) exception as an alternative ground for affirmance, contending that his annuities should be excluded from the bankruptcy estate because they are enforceable spendthrift trusts under Oklahoma law. *See* Okla. Stat.Ann. tit. 60, § 175.25 (West 1971). In support of this proposition, he cites *Greening Donald Co. v. Oklahoma Wire Rope Products, Inc.*, 766 P.2d 970 (Okla.1989). *Greening Donald*, however, did not involve spendthrift trust law. On the contrary, the court in that case held that IRA's cannot be enforceable spendthrift trusts under Oklahoma law. *Id.* at 973. But this does not end the inquiry given our holding that the § 541(c)(2) exclusion is not limited to spendthrift trust law.

*Greening Donald* turned on the court's interpretation of Okla.Stat.Ann. tit. 60, §§ 326–28 (West 1971), which provides that retirement trusts are exempt from state garnishment proceedings provided they meet certain criteria.[4] Specifically, the

---

**3.** The statute provides in relevant part:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(c)(2) *A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.*

11 U.S.C. § 541(c) (emphasis supplied).

**4.** The statute provides in relevant part:

RETIREMENT, PENSION OR PROFIT SHARING PLAN

**§ 326. Perpetuities and restraints on alienation.**

No retirement, pension or profit sharing plan, qualified for tax exemption purposes under present or future Acts of Congress, or any trusts, insurance and annuity contracts constituting a part thereof, shall be construed as violating the rule or law against perpetuities, or any rule or law against restraints on alienation; provided....

court applied the statute to an Individual Retirement Account, holding that the Account was exempt from garnishment because it qualified for tax deferral treatment under the Internal Revenue Code and contained an anti-alienability clause. *See Greening Donald*, 766 P.2d at 972–73. Debtor's argument rests on a superficial similarity between his annuities and the *Greening Donald* account. That is, all the instruments fall into the category of tax deferred investments loosely described as IRA's and Keoghs; however, debtor's instruments do not contain anti-alienability provisions. Whereas the Individual Retirement Account in *Greening Donald* expressly prohibited alienation, the Individual Retirement Annuities and Keoghs in this case expressly allow written assignment. *See* I R. exh. 1 at 14, exh. 2 at 16 and exh. 3 at 14. Clearly, debtor's annuities do not contain anti-alienability clauses enforceable under any "applicable nonbankruptcy law." Therefore, the bankruptcy court correctly included the annuities in the estate.

### III. Exempt Property.

Debtor's IRA's and Keogh undisputedly fit within the Oklahoma exemption statute. *See* Okla.Stat.Ann. tit. 31, § 1A(20) (West 1991).[5] Therefore, barring some legal deficiency in the application of or on the face of the statute, the IRA's and Keoghs should be exempted from the bankruptcy estate pursuant to 11 U.S.C. § 522. Trustee urges us to reinstate the bankruptcy court's holding that the Oklahoma exemption statute as applied is unconstitutional because it impairs the creditors' ability to collect on their contracts, all of which were entered before the effective date of the

---

§ 327. **Provisions against alienation or encumbrance.**
Any such plan, trust or contract may provide against the alienation or encumbrance of the interest of any person therein and further provide that no interest therein shall be subject to garnishment, attachment, execution or the claims of creditors of the persons having an interest therein.
§ 328. **Power to alienate or encumber—Exemption from process and claims**
Any person having an interest in any such plan, trust or contract, or in any property or any right subject to any such plan, trust or contract, containing the provisions set forth in [§ 327], or provisions of substantially the same force and effect, shall have no right to alienate or encumber such right or interest in any manner contrary thereto, and the interest of any such person in any such plan, trust or contract, or in any property or any right subject to any such plan, trust or contract, shall be exempt from garnishment, attachment, execution or the claims of creditors.
Okla.Stat.Ann. tit. 60 (West 1971).

5. The statute provides in relevant part:
§ 1. **Property exempt from attachment, execution or other forced sale—Bankruptcy proceedings**
A. ... the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:
....
20. Subject to the Uniform Fraudulent Transfer Act, Section 112 et seq. of Title 24 of the Oklahoma Statutes, any interest in a retirement plan or arrangement qualified for tax exemption purposes under present or future Acts of Congress; provided, such interest shall be exempt only to the extent that contributions by or on behalf of a participant were not subject to federal income taxation to such participant at the time of such contributions, plus earnings and other additions thereon; provided further, any transfer or rollover contribution between retirement plans or arrangements which avoids current federal income taxation shall not be deemed a transfer which is fraudulent as to a creditor under the Uniform Fraudulent Transfer Act. "Retirement plan or arrangement qualified for tax exemption purposes" shall include without limitation, trusts, custodial accounts, insurance, annuity contracts and other properties and rights constituting a part thereof. By way of example and not by limitation, retirement plans or arrangements qualified for tax exemption purposes permitted under present Acts of Congress include defined contribution plans and defined benefit plans as defined under the Internal Revenue Code ("IRC"), individual retirement accounts, individual retirement annuities, simplified employee pension plans, Keogh plans, IRC Section 403(a) annuity plans, IRC Section 403(b) annuities, and eligible state deferred compensation plans governed under IRC Section 457. This provision shall be in addition to and not a limitation of any other provision of the Oklahoma Statutes which grants an exemption from attachment or execution and every other species of forced sale for the payments of debts. This provision shall be effective for retirement plans and arrangements in existence on, or created after the effective date of this act....
Okla.Stat.Ann. tit. 31 (West 1991).

statute. *See* U.S. Const. Art. I, § 10, cl. 4, ("No State shall ... pass any ... Law impairing the Obligation of Contracts....").

Recognizing that the Contracts Clause "prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people,'" the Supreme Court has crafted a three-part test to determine whether retroactive state legislation that affects contracts is unconstitutional. *See Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983) (quoting *Home Bldg. & Loan Assn. v. Blaisdell*, 290 U.S. 398, 434, 54 S.Ct. 231, 239, 78 L.Ed. 413 (1934)). "The threshold inquiry is 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Id.* at 411, 103 S.Ct. at 704 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978)). If this threshold is met, the law violates the Contracts Clause unless (1) it is supported by a "significant and legitimate public purpose," *id.*, and (2) "the adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption,'" *id.* at 412, 103 S.Ct. at 705 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22, 97 S.Ct. 1505, 1517, 52 L.Ed.2d 92 (1977)).

We need not address whether the Oklahoma statute represents a "substantial impairment," for we are confident that any such impairment is a justifiable exercise of Oklahoma's inherent police power. The district court correctly identified a "significant and legitimate" public purpose—the provision for bankrupt debtor families' needs. *See In re Walker*, 139 B.R. at 33 (N.D.Okla.1990) (citing *Anderson v. Canaday*, 37 Okl. 171, 131 P. 697, 698 (1913)). The Trustee does not attempt to argue that protection of the family is not a significant and legitimate state interest. Instead, he rests on the analysis of the bankruptcy court, which took issue only with the scope of the exemption statute. *In re Walker*, 108 B.R. 769 at 775 (adopting analysis of *In re Garrison*, 108 B.R. 760 (Bankr. N.D.Okla.1989), an opinion issued the same day by the same bankruptcy judge). In *In re Garrison*, the court held that the scope of this exemption was inappropriate to the legitimate public purpose of providing for bankrupt families:

> Here is no example of legislation at its fairest; here is no sign of intensive study of the consequences of what has been done, nor safeguarding the future on the basis of responsible forecasts.... Here is a sweeping, heedless delegation, to a foreign Congress occupied with different concerns, of unqualified power to destroy a venerable and well-founded tradition guarding against abuse of spendthrift trusts, the practical consequence being that the United States Congress, in tinkering with its own tax laws, unknowingly grants a license to defraud creditors to citizens of the State of Oklahoma. These are not reasonable conditions, of a character appropriate to a legitimate purpose....

*In re Garrison*, 108 B.R. at 768 (citations omitted).

The bankruptcy court's concern for the thoughtless "tinkering" of a "foreign Congress" seems peculiar when considering that Oklahoma's authority to legislate bankruptcy exemptions flows from that very congress. *See* 11 U.S.C. § 522(b)(1). Even so, the court correctly asserted that the Oklahoma exemption statute may not be an "example of legislation at its fairest," but "legislation at its fairest" is not a realistic goal. Legislatures must balance competing interests before passing any statute, and it is not our function as federal courts to second guess the resulting choice. On the contrary, "[u]nless the State itself is a contracting party, ... '[a]s is customary in reviewing economic and social regulation, ... courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Energy Reserves*, 459 U.S. at 412–13, 103 S.Ct. at 705 (quoting *United States Trust Co.*, 431 U.S. at 22–23, 97 S.Ct. at 1517–18).

Affording appropriate deference to the policy choice of the Oklahoma legislature, we agree with the district court that no reason exists to declare the exemption statute an unconstitutional impairment of contract. The bankruptcy court focused on the bank-account-like quality of some qualifying IRA's, stating that a debtor can use the accounts "as he pleases but creditors cannot reach [the accounts] at all." *In re Garrison*, 108 B.R. at 768. This does not give adequate weight to the determination by the Oklahoma legislature that substantial early withdrawal penalties and the Uniform Fraudulent Transfer Act, 24 Okla. Stat.Ann. §§ 112–123 (West 1987 & Supp. 1992), are adequate to curb debtor abuse of IRA's. The court mentioned these factors, but discounted them as inadequate protection for creditor interests. *In re Garrison*, 108 B.R. at 768. We cannot agree with this analysis; although the factors may not provide protection of the degree desired by the bankruptcy court, we cannot substitute our judgment for that of the Oklahoma legislature. The exemption statute represents a rational policy choice in favor of debtor retirement funds, whether they be traditional spendthrift type instruments or IRA's and Keoghs. We cannot upset this choice.

■ Trustee next argues that ERISA preempts the exemption statute even though Debtor's annuities are not subject to ERISA regulation. This supposedly is because the non-ERISA portion of the exemption statute is not severable under state law from the "[u]nquestionably" preempted ERISA portion pursuant to the Supreme Court's holding in *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). Trustee's Brief at 16. Preemption of the latter portion of the statute, however, is not "unquestionable." The

*Mackey* Court certainly emphasized the breadth of ERISA preemption, but circuit courts that have since addressed state exemption statutes similar to Oklahoma's are split over the issue of whether the statutes are preempted. *See, e.g., Pitrat v. Garlikov*, 947 F.2d 419 (9th Cir.1991) (preemption, but strong dissent); *Heitkamp v. Dyke (Matter of Dyke)*, 943 F.2d 1435 (5th Cir.1991) (no preemption).

■ We will not decide the ERISA preemption issue until it is squarely before us. Without the benefit of briefing from parties who are litigating ERISA plan exemptions, it would be inappropriate in this case for us to declare unconstitutional the ERISA portion of the statute, and then extend that holding via a severability analysis to the relevant portion of the statute. In any event, the ERISA portion of the Oklahoma exemption statute is superfluous in the bankruptcy context—we have already held that ERISA plans may be excluded altogether from the estate pursuant to 11 U.S.C. § 541(c)(2).[6] *See In re Harline*, 950 F.2d 669.

■ Trustee's final argument is equally meritless. Pursuant to Congress' authority to establish uniform bankruptcy laws, *see* U.S. Const. art. I, § 8, cl. 4, it may delegate to the States the authority to legislate bankruptcy exemptions. *See Stellwagen v. Clum*, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918); *Hanover National Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902). Trustee argues that the Oklahoma exemption statute exceeds the scope of this authority, but he cites no persuasive authority from case law or from the structure or legislative history of the current Bankruptcy Act. Congress intended to provide a "fresh start, but not instant affluence" for bankrupt debtors. *See* S.Rep. 989, 95th Cong.2d Sess. 6 (1978),

---

**6.** Even if we were to hold unconstitutional the ERISA portion of the statute, we would agree with the Debtor that the non-ERISA portion of the statute is severable. Severability is a question of state law, *Watson v. Buck*, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941), and applying Oklahoma law, we think that Oklahoma would have legislated the IRA and Keogh exemptions even if it knew that the ERISA portion of the

statute could be held unconstitutional. *See In re Ridgway*, 108 B.R. 294, 295–298 (Bankr. N.D.Okla.1989) (citing *Riggs v. Branch*, 554 P.2d 823, 827–28 (Okla.Crim.App.1976); *Tulsa Exposition and Fair Corp. v. Board of County Comm'rs*, 468 P.2d 501, 507 (Okla.1970); *Johnson v. State Election Bd.*, 197 Okl. 211, 167 P.2d 891, 894 (1946); *Chicago R.I. & P.R. Co. v. Excise Bd.*, 168 Okl. 519, 34 P.2d 274 (1934)).

*reprinted in* 1978 U.S.C.C.A.N. 5787, 5792. However, Congress certainly was aware of the "wide disparity in the type and amount of exemptions allowed by the various states," 3 Collier on Bankruptcy, § 522.22 (15th ed. 1991), and by delegating to the states the option to legislate bankruptcy exemptions Congress implicitly acknowledged the disparity. The Oklahoma exemption statute is not inconsistent with the alternate federal list in 11 U.S.C. § 522; it simply is more favorable to debtors.

We AFFIRM the district court judgment and remand for further proceedings consistent with this opinion.