**F I L E D**
United States Court of Appeals
Tenth Circuit

**DEC 16 1997**

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

XETA CORPORATION, an Oklahoma
corporation,

      Plaintiff - Appellee,

    v.

CANTON INDUSTRIAL
CORPORATION, a Nevada corporation,

      Defendant - Appellant,

   and

RICHARD DAVID SURBER and
GERALD CURTIS,

      Defendants.

No. 96-4176

(D. Utah)

(D.C. No. 95-CV-218)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, Chief Judge, **ANDERSON**, and **HENRY**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant, Canton Industrial Corporation ("Canton"), appeals from a grant of summary judgment in favor of Plaintiff, Xeta Corporation ("Xeta"), in which the district court found that a transfer of funds Canton had received from ATC II, Inc. ("ATC II") was constructively fraudulent under Utah Code Ann. § 25-6-6(2).

On appeal, Canton contends that genuine issues of material fact exist with respect, essentially, to four issues: (1) whether all of the elements of § 25-6-6(2) were satisfied; (2) whether Canton was in fact the transferee of the funds or a mere conduit; (3) whether Canton gave new value to the debtor, ATC II, in exchange for the transferred funds; and (4) whether the funds were transferred in the ordinary course of business between ATC II and Canton. We affirm.

**BACKGROUND**

In August 1993, Xeta obtained a judgment against ATC II for $149,859.14. As a result of this judgment, in January 1994, the district court ordered ATC II "not to pay out, transfer, mortgage, alienate, or make any other disposition of money, property, or assets, either real or personal, not exempt by law, until further order of the court (except in the ordinary course of business)." In March 1994, in order to satisfy the judgment, Xeta filed an application for an order requiring ATC II to turn over certain assets and property, which the district court granted.

-2-

In April 1994, Canton Financial Services, a subsidiary of Canton, began providing financial consulting services to ATC II. In that same month, Richard Lapsley, the only director of ATC II, appointed Ron Mayoral, Richard Surber, and Larry Adams as the new officers and directors of ATC II.[1] Mr. Mayoral, ATC II's new secretary, was then a Canton employee, and Mr. Surber, ATC II's new chief financial officer, was then also serving as the president of Canton.

In May 1994, in order to satisfy its judgment against ATC II, Xeta filed a second application for the turnover of property and assets. Specifically, this application requested the proceeds from a judgment ATC II had won against another company, Nationwide Cellular Services ("Nationwide"). In July 1994, this application was granted.

In the meantime, however, ATC II had received the $116,500 balance from its judgment against Nationwide and had immediately transferred the full amount to Canton's bank account. From the time of the transfers on June 6 and June 9, 1994, the entire $116,500 was commingled with Canton's own funds, and Canton did not maintain a separate ledger showing debits against the $116,500. Xeta sued in district court to set aside the transfer to Canton as fraudulent under the

---

[1]Larry Adams, who was appointed as the president of ATC II by Richard Lapsley, resigned in May 1994 and was replaced by Gerald Curtis.

Utah Fraudulent Transfer Act ("the Act"), naming Mr. Surber, Mr. Curtis, and Canton as defendants.

After discovery, Xeta moved for summary judgment. Based on the pleadings, depositions, and affidavits, and following briefing by the parties and a hearing, the district court made specific factual findings and determined that the transfer to Canton was constructively fraudulent under Utah Code Ann. § 25-6-6(2). The district court then granted Xeta's motion for summary judgment as to Canton, but not as to Messrs. Surber and Curtis.

**DISCUSSION**

We review de novo the district court's grant of summary judgment in favor of Xeta and apply the same legal standard used by the district court, viewing the facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party. Taylor v. Mecham, 82 F.3d 1556, 1559 (10th Cir.), cert. denied, 117 S. Ct. 186 (1996); Henderson v. Inter-Chem Coal Co., 41 F.3d 567, 569 (10th Cir. 1994). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

**A.  Elements of Utah Code Ann. § 25-6-6(2)**

Canton's omnibus contention that issues of material fact exist as to the alleged violations of Utah Code Ann. § 25-6-6(2) (nothing more specific is offered) is not properly before us. Although Canton lists this issue in its "Statement of the Issues Presented for Review," Appellant's Br. at 1, it does not address it until its reply brief. See Appellant's Reply Br. at 2, 3. Therefore, this issue is waived. See Johnson by Johnson v. Thompson, 971 F.2d 1487, 1499 (10th Cir. 1992) (stating that this court generally does not address issues merely listed in the brief's "Statement of the Issues" and not argued in the brief); Abercrombie v. City of Catoosa, Okla., 896 F.2d 1228, 1231 (10th Cir. 1990) (stating that where appellant listed the issue on appeal but failed to argue the issue in the brief or at oral argument, it is waived); see also Fed. R. App. P. 28(a)(6) (stating that the appellant's brief must include an argument "contain[ing] the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on"). Canton could not revive this issue by addressing it in its reply brief or in oral argument. See Codner v. United States, 17 F.3d 1331, 1332 n.2 (10th Cir. 1994) (stating that an issue raised for the first time in the reply brief is waived); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1547 (10th Cir. 1995) (stating that an issue inadequately briefed on appeal but asserted at oral argument is waived).

In any event, Canton's arguments lack merit. In its reply brief, Canton

asserts that genuine issues of material fact exist as to two elements—whether

Canton was an insider of ATC II, and whether there was reasonable cause to

believe ATC II was insolvent at the time of the transfer.[2] As to the first

argument, Canton makes conclusory assertions that "[e]vidence has never been

presented that ATC II was ever dominated by Canton," and that "[n]o decision or

action of ATC II has ever been shown to have not been taken wholly and

exclusively in ATC II's best interest."[3] Appellant's Reply Br. at 2. However,

Xeta clearly did provide the district court with evidence of Canton's control of

ATC II as an insider,[4] and the "best interests" standard is not the test for insiders

outlined in the Act. See Utah Code Ann. § 25-6-2(7)(b).

---

[2]Under the Act, a transfer made by a debtor is fraudulent "as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent." Utah Code Ann. § 25-6-6(2).

[3]Under the Act, an "insider" of a debtor corporation includes a director or officer of the debtor, or a person in control of the debtor. Utah Code Ann. § 25-6-2(7)(b).

[4]In its motion for summary judgment, Xeta presented the following evidence, inter alia, that Canton was in control of ATC II: (1) an ATC II proxy statement stating that "until directors are elected at the next annual meeting, Richard D. Surber may be deemed to control the Company . . . [and] to share control with The Canton Industrial Corporation. Supplemental App., R. Excerpts in Supp. of Pl.'s Mot. for Summ. J., Ex. C. (Surber Dep., Ex. 1); and (2) excerpts from Gerald Curtis' deposition indicating that the wire transfer of the $116,500 was a "collective decision" between the officers of ATC II and Canton and was accomplished under Canton's direction. Id., Ex. E at 24.

-7-

The second element of § 25-6-6(2) challenged by Canton in its reply brief is whether there was reasonable cause to believe ATC II was insolvent at the time of the transfer.[5]  However, Canton either misstates or misunderstands the issue, arguing only that ATC II's officers subjectively believed that ATC II was solvent.  Appellant's Reply Br. at 3.  This argument is meritless for several reasons.  First, the Act requires only "reasonable cause to believe" and not subjective belief.  See Utah Code Ann. § 25-6-6(2).  Second, even if subjective belief were the standard, the Act refers to the insider's belief—who in this case is Canton—not the belief of the debtor, ATC II.  See id.  Third, even if the debtor's belief were relevant, Canton's argument addresses only one definition of insolvency under § 25-6-3(1) (where the debtor's assets are less than its debts) and fails to address the alternative definition available in this case (where the debtor is generally not paying debts as they came due).  See Utah Code Ann. § 25-6-3(1).

In sum, the district court did not err in granting summary judgment as to the existence of constructive fraud under § 25-6-6(2).

---

[5]Conversely, Canton also appears to be arguing indirectly that ATC II was solvent at the time of the transfer.  Under the Act, a debtor is insolvent if the sum of its debts is greater than all its assets at their fair valuation, and a debtor is presumed insolvent if it is generally not paying debts as they come due.  Utah Code Ann. § 25-6-3(1).  Xeta provided the district court with Canton's own answers to Xeta's interrogatories, which indicate that at the time of the transfer, ATC II had debts owing in excess of $1 million and that every debt listed was "past due and in arrears."  Supplemental App., Pl.'s Resp. to Defs.' Br. in Opp'n to Mot. for Summ. J., Ex. L.  This evidence created a presumption of insolvency, and Canton provided no evidence to the contrary.

## B. Conduit Theory

Next, Canton asserts that under the "mere conduit theory," it was not the actual transferee of the funds and thus is not liable.[6] Canton's appeal on this point is also procedurally defective. Although Canton elliptically alluded to the conduit theory in its brief in the district court in opposition to Xeta's motion for summary judgment,[7] it did not directly identify or discuss it, and correspondingly, the district court did not address it. In this circuit, we will not consider on appeal an issue that was not properly raised before the district court. See Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc., 100 F.3d 792, 798-99 (10th Cir.), amended on other grounds, 103 F.3d 80 (10th Cir. 1996); Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992).

---

[6]Under the conduit theory, "where the recipient of a transfer is but an agent of the creditor to whom the agent, without any benefit to himself, passes along property, liability will not attach to the agent." In re Maxwell Newspapers, Inc., 151 B.R. 63, 70 (Bankr. S.D.N.Y. 1993). The key in determining liability under this theory is whether the "agents" or "conduits" ever actually controlled the transferred funds. Nordberg v. Societe Generale (In re Chase & Sanborn Corp.), 848 F.2d 1196, 1199-1200 (11th Cir. 1988). In assessing control, "courts must 'look beyond the particular transfers . . . to the entire circumstance of the transactions,'" id. at 1199 (citation omitted), and the same analysis applies "regardless of whether a court is attempting to determine whether a debtor controlled the . . . funds it transferred to a defendant or a defendant gained control over the funds transferred to it." Id.

[7]Canton stated: "[Canton] denies that it was the recipient of the targeted transfer in full. Of the $116,500 that the Plaintiff has targeted only $50,500 was retained by [Canton], the balance of the targeted funds were paid to other creditors of ATC II." Appellee's Supplemental App. at 53.

In any event, as with Canton's previous contention, the argument is meritless. While Canton insists that "the record shows that" the large majority of the $116,500 transferred to it was immediately transferred to other third parties, Appellant's Br. at 7-8, it identifies nothing in the record to support this assertion.[8]

## C. New Value

Next, Canton argues that even if the elements of constructive fraud under § 25-6-6(2) were satisfied, summary judgment was improper because a genuine issue of material fact exists as to whether Canton gave ATC II new value for the transfer.[9] This issue also was not clearly presented to, and was therefore not

---

[8] After thoroughly searching the record, the only possible support we can find is the list of alleged disbursements of the $116,500 which was introduced as an exhibit in Mr. Surber's deposition and was included with Xeta's response to Canton's brief in opposition to the motion for summary judgment. See Supplemental App., Pl.'s Resp. to Defs.' Br. in Opp'n to Mot. for Summ. J., Ex. M (Surber Dep., Ex. 2). However, in his deposition, Mr. Surber admitted that this list was only "preliminary" and did not in any way confirm that the money was actually disbursed as shown. Id., R. Excerpts in Supp. of Pl.'s Mot. for Summ. J., Ex. C at 18-21; see Appellant's App. at 56, 89. Although Mr. Surber agreed to provide some proof of disbursement as indicated on the list, as far as the record indicates, no such proof was ever provided.

[9] Under the Act, a transfer will not be voidable under § 25-6-6(2) "to the extent the insider gave new value to or for the benefit of the debtor after the transfer was made unless the new value was secured by a valid lien." Utah Code Ann. § 26-6-9(6)(a).

-10-

addressed by, the district court.[10]  Therefore, it is not appealable.  See Walker, 959 F.2d at 896; Bancamerica, 100 F.3d at 798-99.

Furthermore, as with Canton's previous contentions, this argument is wholly unsupported.  Canton generalizes that "financial records, together with the personal affidavits," prove that it "gave new value to the debtor after the transfer," Appellant's Br. at 8, and alleges that "the affidavits and evidence it has presented concerning the consideration and value given for the transfer have not been duly considered."  Id. at 9.  However, once again it refers us to no specific portion of the record supporting its assertion.

### D.  Ordinary Course of Business

Finally, Canton argues that even if the elements of constructive fraud under § 25-6-6(2) were satisfied, summary judgment was improper because a genuine issue of material fact exists as to whether ATC II transferred the money to Canton in the ordinary course of business.[11]  And, again, we find that this issue was not

---

[10]In the district court, Canton quoted Utah Code Ann. § 25-6-9(6) generally and asserted only that the transferred funds were paid out by Canton to third parties in exchange for "services and goods" that were "real and of actual use to ATC II." Appellee's Supplemental App. at 61.  As a result, Canton argued, "ATC II received value" for the transferred funds.  Id.  Nowhere in its brief to the district court did Canton assert that *new* value had been given, or that such value had been given by Canton itself.

[11]Under the Act, a transfer will not be voidable under § 25-6-6(2) "if made in the ordinary course of business or financial affairs of the debtor and the insider."  Utah Code Ann. § 26-6-9(6)(b).

developed in, and therefore was not addressed by, the district court,[12] thus leaving

no basis for appeal.  <u>Walker</u>, 959 F.2d at 896; <u>Bancamerica</u>, 100 F.3d at 798-99.

But again, even if considered, the argument is meritless.  Canton claims

that the "financial records, together with the personal affidavits of [Canton]

employees and others . . . give rise to a genuine issue of material fact as to

whether the funds were used in the ordinary course of ATC II's business."

Appellant's Br. at 8.  In particular, Canton asserts that "these funds were applied

to pay debts ATC II had incurred in the usual course of its business."  <u>Id.</u>

Assuming this to be true, Canton has nevertheless failed to satisfy the

requirements of the Act, which refers to the ordinary course of business "of the

debtor *and* the insider."  Utah Code Ann. § 25-6-9(6)(b) (emphasis added).  More

important, however, Canton presented no evidence sufficient to create a genuine

---

[12]In the district court, Canton quoted Utah Code Ann. § 25-6-9(6) generally and argued that "[a] large amount of the targeted funds were paid to third-parties not made parties hereto and thus, it can be assumed not targets of Plaintiff's assertion of fraudulent intent."  Appellee's Supplemental App. at 62.  Then, after quoting Utah Code Ann. § 25-6-9(1),  Canton asserted that "[p]laintiff has failed to show that ATC II was acting to prevent Plaintiff's collection of its judgment rather than in good faith in the normal course of its business activities."  <u>Id.</u>; <u>see</u> Utah Code Ann. § 25-6-9(1) (stating that a transfer that is "actually" fraudulent under § 25-6-5(1)(a) is not voidable against one who took in good faith and for a reasonably equivalent value).  Other than these vague arguments and bald assertions, Canton offered the district court no evidence that the funds were transferred from ATC II to Canton to third parties in the ordinary course of business.  <u>See</u> <u>Lyons v. Jefferson Bank & Trust</u>, 994 F.2d 716, 722 (10th Cir. 1993) (stating that issues "discussed in a vague and ambiguous way" are "not passed on below" and are thus waived).

issue of material fact that it regularly paid ATC II's obligations on ATC II's behalf or that transfers under these circumstances and in this manner were integral to the ordinary course of ATC II's business.[13]

## CONCLUSION

For the reasons stated, Canton's appeal is procedurally defective. Alternatively, it has not demonstrated the existence of any genuine issues of

---

[13]Although Canton does not direct the court to any evidence on this point in its original brief, in its reply brief it does specifically direct the court's attention to the affidavit of the president of ATC II at the time, Gerald Curtis, which was originally submitted to the district court with Canton's brief in opposition to Xeta's motion for summary judgment. Appellant's Reply Br. at 4. Whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.'" Nichols v. Hurley, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)). Mr. Curtis' affidavit offers no supporting facts and is thus without probative value.

material fact, or any error of law by the district court.[14]  Accordingly, the

judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[14]Because of our disposition of the appeal on the grounds stated, we need not address Xeta's further arguments regarding constructive and actual fraud under Utah Code Ann. §§ 25-6-6(1) and 25-6-5(2).  See Griffin v. Davies, 929 F.2d 550, 554 (10th Cir. 1991).