**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 31 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARY BIG ELK and RAYMOND
POLLARD, a/k/a SAM McCLANE,

     Plaintiffs-Appellants,

v.

BOARD OF COUNTY
COMMISSIONERS OF OSAGE
COUNTY, DONNA KASTNING,
RUSSELL COTTLE in his official
capacity, and LARRY STUART in his
individual capacity,

     Defendants-Appellants.

No. 99-5115

N.D. Okla.

(D.C. No. 96-CV-87-B)

---

**ORDER AND JUDGMENT**

---

Before **HENRY** and **BRISCOE** , Circuit Judges, and **JENKINS** , Senior District
Judge. [*]

---

Mary Big Elk and Raymond Pollard, also known as Sam McClane, filed suit

against various defendants pursuant to 42 U.S.C. § 1983, alleging that their horses

had been illegally seized in violation of the Fourth and Fourteenth Amendments.

Following a trial, the jury found two of the defendants liable, namely, the Board

---

[*] The Honorable Bruce S. Jenkins, Senior District Judge for the
United States District Court for the District of Utah, sitting by designation.

of County Commissioners of Osage County ("Board") and Donna Kastning, a deputy sheriff for Osage County, and awarded the plaintiffs actual and punitive damages. The district court later amended the judgment pursuant to a motion by the defendants, reducing the actual damages award by three thousand dollars. In addition, the district court refused to grant the plaintiffs injunctive relief, holding that the policy of the Osage County sheriff's department, under which a deputy is permitted to attend a civil repossession in a stand-by capacity only, did not violate the Constitution. The plaintiffs now appeal on various grounds. For the reasons set forth below, we affirm in part and vacate and remand in part.

## I. BACKGROUND

The facts of the case are well known to the parties and have been recounted in part in a prior appeal. See Big Elk v. Kastning, No. 97-5012, 1998 WL 161053 (10th Cir. Apr. 1, 1998). To summarize, this case arose out of a dispute between Mr. McClane and Tina Kastning. Fearing that Mr. McClane would not pay a debt owed her, Tina Kastning seized several horses that were housed in stalls rented by Mr. McClane. She was assisted in her efforts by several private citizens as well as several deputy sheriffs, including her sister-in-law Donna Kastning. Under an unwritten policy in the sheriff's department, a deputy is permitted to attend a civil repossession but in a stand-by capacity only. That is, a private citizen can call a

-2-

deputy and have the deputy accompany her to the site where the property is being held. The deputy is not to take an active part in the repossession; rather, her sole purpose in attending is to ensure that no breach of peace takes place.

## II. PROCEDURE

In their complaint, the plaintiffs alleged that the defendants had illegally seized their horses in violation of the Fourth and Fourteenth Amendments. The named defendants were: (1) Donna Kastning, Dan Hively, and Wes Penland, all deputy sheriffs for Osage County; (2) Michael Kastning, Tina Kastning, Calvin Kastning, and Jana Welch, all private citizens; and (3) Larry Stuart, district attorney for Osage County. Approximately six months later, the plaintiffs reached a settlement agreement with Michael Kastning, Tina Kastning, and Calvin Kastning. These defendants were subsequently dismissed from the lawsuit. A default judgment was later obtained against Ms. Welch, the remaining private citizen defendant.

On July 26, 1996, the district court issued a scheduling order, which provided in part that joinder of additional parties and/or amendment of pleadings take place by July 29, 1996. Despite this order, the district court permitted the plaintiffs to amend their complaint several months later for the limited purpose of "add[ing] the Board of Commissioners of Osage County and Henry Bloomfield,

[s]heriff of Osage County, as parties to the case." [1] Aplts' App. vol. V, at 001157 (district court order, filed Nov. 5, 1996). The plaintiffs did so. However, in their amended complaint, they did not simply name the Board and Sheriff Bloomfield as additional defendants; they also asked for the first time for injunctive relief, more specifically, for a permanent injunction to enjoin the sheriff's department from continuing its policy under which a deputy is permitted to attend a civil repossession in a stand-by capacity. Furthermore, the plaintiffs stated their intention to proceed with the suit as a class action, at least with respect to the claim for injunctive relief.

Almost a month later, the plaintiffs formally moved for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2). The district court denied the motion as untimely. Thereafter, the district court ruled on various summary judgment motions pending before it. Initially, it denied the motions but then amended its order after reconsideration and granted summary judgment to Mr. Stuart, the district attorney for Osage County.

The deputy sheriff defendants – Donna Kastning, Mr. Hively, and Mr. Penland – subsequently filed an interlocutory appeal, arguing that the district

---

[1] Because Mr. Bloomfield died before trial and was being sued in his official capacity only, Russell Cottle, the new sheriff, was later substituted for him. See Aplts' App. vol. V, at 0001405 (district court order, filed Aug. 27, 1998).

-4-

court should have granted them summary judgment on the basis of qualified immunity. This court dismissed the appeal. The trial began several months later, and, on October 6, 1998, the jury returned a verdict in favor of the plaintiffs against the Board and Donna Kastning, awarding $25,325 in actual damages and $10,000 in punitive damages. The remaining defendants were found not liable.

The next day, the district court entered judgment. Subsequently, both the plaintiffs and the defendants moved that it be altered or amended. The plaintiffs moved (1) to include prejudgment interest in the award of actual damages; (2) to reconsider their request for class certification; and (3) to grant their request for injunctive relief (i.e., to enjoin the sheriff's department's policy). The district court denied the motion. It granted, however, the defendants' motion, reducing the award of actual damages by three thousand dollars to reflect the amount the plaintiffs had received as part of the settlement agreement with Michael Kastning, Tina Kastning, and Calvin Kastning.

III. DISCUSSION

On appeal, the plaintiffs raise five arguments, namely, that the district court erred in (1) refusing to grant them injunctive relief; (2) rejecting their motion for class certification; (3) granting summary judgment to Mr. Stuart, the district attorney for Osage County; (4) denying them prejudgment interest; and (5)

-5-

reducing their actual damages award by three thousand dollars. We address each of these arguments in turn.

A. Injunctive Relief

In their amended complaint, the plaintiffs included in their prayer for relief a request for a permanent injunction to enjoin the sheriff's department from continuing its policy under which a deputy is permitted to attend a civil repossession in a stand-by capacity. The district court refused to grant this relief, holding that, because the policy only allowed the deputy to be present at the repossession and nothing more, it did not violate either the Fourth or Fourteenth Amendments. We hold that the district court properly denied the plaintiffs injunctive relief but on the basis that the plaintiffs lacked standing. See Wilson v. Glenwood Intermountain Properties, Inc., 98 F.3d 590, 592-93 (10th Cir. 1996) ("Standing is a jurisdictional issue that may be raised by the court at any time.").

Under City of Los Angeles v. Lyons, 461 U.S. 95 (1983), a plaintiff lacks standing to seek prospective injunctive relief if he or she cannot show a real or immediate threat of future harm. See id. at 105-06; see also O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); Buchwald v. University of N.M. Sch. of Med., 159 F.3d 487, 493 (10th Cir. 1998)

("[P]laintiff's standing to seek an injunction ordering her admission to the school based solely on her allegations of past misconduct does not entail standing to seek an injunction prohibiting future use of the disputed preference."). According to the plaintiffs, they can demonstrate such a threat because they continued to be debtors [2] after the seizure of the horses, thus making re-imposition of the policy a likely recurrence. See Aplts' Reply Br. at 18. This argument, however, is not persuasive, especially in light of Smith v. Colorado Department of Corrections, 23 F.3d 339 (10th Cir. 1994).

In Smith, the plaintiff challenged a prison regulation under which an inmate's property would no longer be held in storage if the inmate was placed in a higher security facility such as maximum security or administrative segregation. According to the plaintiff, he had standing to challenge this regulation because "he ha[d] twice been regressed to higher security facilities" and so "it [was] foreseeable that it could recur," especially since "he ha[d] twenty-seven years [remaining] to serve" and "being regressed is a common occurrence among inmates." Id. at 341. This court rejected the argument, concluding that "[t]his

---

[2] According to the plaintiffs, they were "debtors before, during, and after the horsetaking [sic] incidents," Aplts' Reply Br. at 18. However, the plaintiffs make only one citation to the record to support this claim, and that citation merely indicates that the two were in financial difficulty. See Aplts' App., vol. I, at 000139-40 (testimony of Ms. Big Elk). Still, for purposes of this opinion, we assume that the plaintiffs were in fact debtors.

does not suffice for the concrete, actual[,] or imminent injury suffered by the plaintiff required for standing." Id. In short, neither the plaintiff's past regressions nor his current status as inmate were, by themselves, sufficient to establish a real or immediate threat of being subject to the prison regulation in the future.

Given Smith, we fail to see how the plaintiffs in the instant case had standing: The fact that they were debtors does not demonstrate, without more, that they stood a "good chance" of being subject once again to the policy. Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991) (noting that the Supreme Court has held that, "while a plaintiff who has been constitutionally injured can bring a § 1983 action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future"). Arguably, the threat of future harm would have been more concrete if the plaintiffs had debts which were, with certainty, secured by personal property and past due; if one of their creditors expressed a desire to repossess the property pledged as security; and if the creditor actually contacted the sheriff's department, seeking to have a deputy stand by during the repossession. But again, nothing in the record suggests that this was the case; therefore, the threat remained nothing more than speculation, ungrounded in reality.

-8-

B.  Class Certification

Soon after filing their amended complaint with the district court, the plaintiffs formally moved for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2).  The relief sought was, once again, a permanent injunction to enjoin the sheriff's department from continuing its policy.  The district court denied the motion on the basis that it was not timely filed in compliance with the scheduling order the district court had issued several months earlier.

We note first that, under Federal Rule of Civil Procedure 16(f), "[i]f a party or party's attorney fails to obey a scheduling or pretrial order, . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just . . . ."  Fed. R. Civ. P. 16(f).  However, we need not resolve the issue of whether the district court acted properly pursuant to Rule 16(f) because there is a simpler way to resolve the issue.  Because the plaintiffs did not themselves have standing to enjoin the sheriff's department's policy, they cannot bring a class action on behalf of others seeking that same relief.  See Fallick v. Nationwide Mut. Ins. Co. , 162 F.3d 410, 423 (6th Cir. 1998) ("Threshold individual standing is a prerequisite for all actions, including class actions."); see also Simon v. Eastern Ky. Welfare Rights Org. , 426 U.S. 26, 40 n.20 (1976) (noting that the threshold question when considering whether an action should be certified as

class action must necessarily be whether the plaintiff has standing to sue on his own behalf).

     <u>C.  Summary Judgment to Mr. Stuart</u>

     Mr. Stuart, the district attorney for Osage County, was named as a defendant in the proceedings because of a conversation that had taken place between him and Tina Kastning's attorney, Steve Lamirand, prior to the seizure of the horses. Before Tina Kastning seized the horses, she contacted Mr. Lamirand, who then called Mr. Stuart, asking him if a criminal matter was at stake given certain facts. Mr. Stuart told Mr. Lamirand that the repossession of partnership assets was a civil matter and that if Tina Kastning took possession of the horses he would not prosecute her.

     During the proceedings below, the district court granted summary judgment to Mr. Stuart on the basis that he "did not participate in or condone the horse seizure." Aplts' App., Ex. D, at 2 (district court order, filed Jan. 30, 1997). The district court also noted that summary judgment was proper because Mr. Stuart was "not an employee of Osage County or a policy maker for the purposes of a § 1983 violation." <u>Id.</u> (district court order, filed Jan. 30, 1997). On appeal, the plaintiffs seek to reverse this order but only for purposes of injunctive relief – i.e., to enjoin the sheriff's department's policy. Once again, because the plaintiffs did not have standing to seek this relief, they can sustain no such claim.

D. Prejudgment Interest

It is well established that "[t]he decision [of] whether or not to allow prejudgment interest rests within the sound discretion of the trial court. Accordingly, the standard of review on appeal is whether the trial court abused its discretion in awarding – or in declining to award – prejudgment interest." Kleier Adver., Inc. v. Premier Pontiac, Inc., 921 F.2d 1036, 1040 (10th Cir. 1990) (internal quotation marks omitted). "Under the abuse of discretion standard[,] a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 763 (10th Cir. 1997) (internal quotation marks omitted).

In its order, the district court began its analysis by explaining that "[t]he rationale underlying an award of prejudgment interest is 'to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of judgment.'" Aplts' Br., Ex. A, at 2-3 (district court order, filed Apr. 16, 1999) (quoting U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1256 (10th Cir. 1988), implied overruling on other grounds recognized by Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1231 (10th Cir. 1996)). It then denied the plaintiffs prejudgment interest, concluding that such an award

would be enrichment and not compensation because the plaintiffs had unduly delayed in filing suit after the horses were seized and then returned. See id. at 4 (district court order, filed Apr. 16, 1999) ("The suit was commenced some 17 months after the return of the horses to Plaintiffs. Under these facts, awarding compensation in the form of prejudgment interest would serve to enrich Plaintiffs for a substantial period of time after the return of their horses and the Court concludes it is not warranted.").

A delay in filing may be taken into account in making a determination on prejudgment interest. See Martin A. Schwartz & John E. Kirklin, 1C Section 1983 Litigation § 16.17 (1997) (noting that, in deciding whether and how much prejudgment interest should be granted, federal courts have considered various factors, including delay in filing); cf. Williamson v. Handy Button Mach. Co., 817 F.2d 1290, 1298 (7th Cir. 1987) (discussing delay in filing in § 1981 context). However, as the plaintiffs note, they requested prejudgment interest only from the date they filed the complaint, not from the date the horses were seized or returned. We therefore must vacate and remand so that the district court may reconsider the denial in light of the fact that the plaintiffs seek prejudgment interest only from the date the complaint was filed. [3]

---

[3] We note that the district court did award prejudgment interest to the plaintiffs with respect to their claim against Ms. Welch. Notably, prejudgment

(continued...)

E.  Reduction in Actual Damages Award

Following the jury verdict, the district court reduced the award of actual

damages by three thousand dollars to reflect the sum paid by Michael Kastning,

Tina Kastning, and Calvin Kastning as part of the settlement agreement with the

plaintiffs.  We review the method of calculation of damages de novo and the

actual calculation of damages for clear error.      See Southern Colo. MRI, Ltd. v.

Med-Alliance, Inc.  , 166 F.3d 1094, 1100 (10th Cir. 1999).

As a preliminary matter, we note that § 1983 does not contain any provision

as to the propriety of offsetting an actual damages award because of a settlement.

Because § 1983 does not provide any substantive law on the matter, we are

obligated to "fill [the] interstices" of this federal statutory scheme.      Miller v.

Apartment & Homes of N.J., Inc.   , 646 F.2d 101, 107 (3d Cir. 1981).  Happily,

"Congress [has] provided [us with] some modest guidance for resolving" this

problem through 42 U.S.C. § 1988.      Id. at 105.  Section 1988 dictates that, where

there are gaps in a civil rights statute, we must first look to federal law to supply

the substantive law, but if federal law is somehow deficient then we apply state

[3](...continued)
interest began to accrue on the day the plaintiffs filed their complaint. See Aplts'
App. vol. V, at 001411 (district court order, filed Nov. 25, 1996) (awarding
prejudgment interest "from the date of filing until the date of this Judgment").

-13-

law, that is, assuming it is consistent with the Constitution and other federal law. See 42 U.S.C. § 1988.

For purposes of this case, whether we are guided by federal law or state law is not important because, under either, there would be a reduction in the plaintiffs' actual damages award because of the money received as part of the settlement agreement. [4] See generally Miller, 646 F.2d at 101 (applying federal common law and reducing the damages award by the amount of settlement); 12 Okla. Stat. Ann. § 832(H)(1) ("When a release, covenant not to sue, or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury . . . [i]t does not discharge any other tort-feasor from liability for the injury . . . unless the other tort-feasor is specifically named; but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater . . . ."). In any event, the plaintiffs do not seriously contend that there should be no offset whatsoever. The real issue for the plaintiffs is the amount of the offset.

_____

[4] The plaintiffs do not argue whether reduction should proceed on a dollar-for-dollar basis or a proportionate share basis. See Dobson v. Camden, 705 F.2d 759, 768 (5th Cir. 1983) (discussing the various possible methods of reducing), reh'g en banc, 725 F.3d 1003 (1984). Consequently, we do not address this matter on appeal. See In re Walker, 959 F.2d 894, 896 (10th Cir. 1992) (noting the general rule that "a federal appellate court does not consider an issue not passed upon below") (internal quotation marks omitted).

The district court reduced the actual damages award by three thousand dollars –

i.e., the entire settlement award. According to the plaintiffs, this was error

because the settlement award was not simply compensation for the seizure of the

horses; rather, the settlement award also covered other injuries sustained by the

plaintiffs for which only the settling defendants were responsible, including an

assault of Mr. McClane and damage to a car as a result of the assault.

Consequently, the plaintiffs assert that the offset should be less than three

thousand dollars.

We disagree, concluding that the district court did not clearly err in

reducing the actual damages award by the entire amount of the settlement.

Admittedly, there is some evidence in the record that suggests Mr. McClane was

assaulted and that this assault led to property damage. Furthermore, the

settlement agreement specified that it covered not only actual claims raised in the

pleadings but potential claims as well.    See Aplts' App. vol. V, at 001136-37

(agreed journal entry of compromise, settlement and judgment dismissing claims

with prejudice, filed Aug. 26, 1996). However, even if the assault and property

damage were taken into account in negotiating the settlement, the settlement

agreement on its face made no distinction as to which part of the award was

compensation for which injury. The district court therefore had no meaningful

way of determining an appropriate set-off. Notably, the plaintiffs themselves

failed to provide any guidance on the matter, simply contending that the set-off should be an unspecified amount less than three thousand dollars.

Accordingly, we AFFIRM in part and VACATE and REMAND in part for further proceedings consistent with this opinion.

Entered for the Court,


Robert H. Henry
Circuit Judge